2004-NMCA-135

102 P.3d 1285

**MATRIX PRODUCTION COMPANY,**
a Texas corporation, Plaintiff–
Appellant,

v.

**RICKS EXPLORATION, INC.,** an Okla-
homa corporation, Cardinal River Farm,
Inc., Enerstar Resources Oil & Gas,
L.L.C., Rehoboth, Inc., Tropical Miner-
als, Inc., Monarch Resources, L.L.C.,
Eleven Sands Exploration, Inc., Discov-
ery Exploration, Peak Investments,
Claude Arnold, H.J. Freede, Joe D. Pate
Trust, Joe D. Pate, Jr. Trust, J. Durwood
Pate, Jr. Trust, David C. Story, Larry
Fenity, Blake Arnold, Jon G. Massey,
Defendants–Appellees.

No. 24,211.

Court of Appeals of New Mexico.

July 26, 2004.

Certiorari Denied, No. 28,857, Dec. 7, 2004.

Paul R. Owen, Montgomery & Andrews,
P.A., Santa Fe, NM, John Timothy Byrd
Houston, TX, for Appellant.

William G. W. Shoobridge, Shoobridge
Law Firm, P.C., Hobbs, NM, Bradley A.
Gungoll, Julia C. Rieman, Gungoll, Jackson,
Collins, Box & Devoll, P.C., Enid, OK, for
Appellees.

*OPINION*

FRY, Judge.

{1} This oil and gas case arises out of a
model form joint operating agreement (JOA)
to explore and develop minerals in Lea Coun-
ty, New Mexico, between the co-lessees of
the mineral estate. "Form 610 Model Oper-
ating Agreement has been in use in the oil

and gas industry in one form or another since 1956." John R. Reeves & J. Matthew Thompson, *The Development of the Model Form Operating Agreement: An Interpretive Accounting,* 54 Okla. L.Rev. 211, 213 (2001). As this Court observed in *Nearburg v. Yates Petroleum Corp.,* 1997–NMCA–069, ¶ 2, 123 N.M. 526, 943 P.2d 560, "[o]perating agreements are commonly used in the oil and gas industry in New Mexico and other producing states to set forth the arrangement between interest owners as to exploration and development of jointly owned interests." Two clauses of the JOA are particularly significant in this case: (1) the clause requiring that any party to the agreement who wishes to propose a subsequent drilling operation give notice to the other parties, who then can decide whether they wish to participate in the operation; and (2) the clause exculpating the operator of the drilling operation from losses sustained by any other party to the JOA unless the losses result from the operator's gross negligence or willful misconduct in the drilling operation.

{2} In this case, one of the parties to the JOA, Plaintiff Matrix Production Company (Matrix) sued another party, the drilling operator, Ricks Exploration, Inc. (Ricks), and other co-lessees of the mineral estate, alleging that it did not receive the required notice of the drilling of a well called "Burrus No. 3." Matrix claimed it was entitled either to an accounting of its share of the profits from the well's production, or for damages or specific performance for breach of contract. The trial court granted summary judgment in Defendants' favor. Because we agree with the trial court that no genuine issues of material fact exist as to whether Matrix received notice, or whether the exculpatory clause applied, we affirm.

## BACKGROUND

{3} The following facts are undisputed. On December 16, 1999, Matrix and Defendants entered into a JOA to explore and develop minerals in an area of Lea County, New Mexico, known as the "Contract Area." The JOA stated that an initial well would be drilled on or before March 31, 2000, at a specified location. The JOA also described the required process for drilling wells within the Contract Area subsequent to the drilling of the initial well. It provided that if a party to the agreement elected not to participate in a proposed operation, that party would be subject to what the JOA described as a non-consent penalty. This penalty prevents a non-participating party from recovering proceeds from a well until the proceeds from the sale of the party's share in the mineral estate equal 400% of the portion of the costs and expenses of the well that would have been chargeable to that party had it participated in the operation.

{4} On May 4, 2001, Defendant Ricks, the operator, gave Matrix written notice of its intention to drill a third well, Burrus No. 3, at a specified location. The notice gave Matrix the option of either participating in the operation or declining to participate and being subject to the non-consent penalty. Matrix declined to participate in the proposed operation.

{5} In January 2002, after the well had been completed, a surveyor staking new wells determined that the Burrus No. 3 well was not at the exact location where the operator had proposed to drill and which had been stated in the notice. The well had been drilled approximately 500 feet from its intended location; however, Matrix produced no evidence that Defendants knew of the mistake before that time. Matrix did introduce the testimony of the president of one of the defendants who said that he had driven past the location at some point during July 2001, and that the well appeared not to be in precisely the right place. However, this co-lessee further testified that he notified Ricks, and that after checking with field personnel, Ricks confirmed that the well was in the right place. Indeed, Defendants produced evidence that in July 2001, Ricks' production foreman went to the site and read the tag on the stake and confirmed the location with a company geologist. There was also evidence that the contractor hired to build the location for the well also checked the tag and confirmed the location.

{6} When it became clear in January 2002 that the well had in fact been drilled 500 feet from the intended location, Matrix filed suit seeking an accounting for its share in the

profits and damages for breach of contract. Defendants answered and counterclaimed for a declaratory judgment. Matrix then moved for summary judgment, arguing that there was no dispute that it did not receive notice of the drilling as required by the JOA, and that Matrix was entitled to an accounting for all profits or, in the alternative, for specific performance. The trial court denied Matrix's motion on the ground that issues of material fact remained about whether misplacement of the well was intentional or resulted from excusable inadvertence. Matrix moved for leave to file a second amended complaint to add claims for gross negligence, violation of the Oil and Gas Proceeds Payment Act, and conversion. Defendants opposed this motion, arguing that no newly discovered facts had precipitated the need to amend and that adding three new causes of action would require them to reschedule depositions in two or three states after discovery had been substantially completed. Matrix did not file a request for a hearing on its motion to amend.

{7} After the completion of discovery, Defendants moved for summary judgment, arguing that it was undisputed that Matrix received notice of the proposed operation, and that the JOA's exculpatory clause precluded Matrix's claims because Matrix had produced no evidence that Ricks' mistake in drilling the well 500 feet from the intended location was grossly negligent or the result of willful misconduct. The trial court granted Defendants' motion for summary judgment, stating that there was no dispute as to the material facts: that Defendants had provided notice of the drilling of the Burrus No. 3 well in compliance with the JOA; that Matrix had declined to participate in the drilling operation; and that there was no evidence that the mistake in drilling the well 500 feet from its intended location was the result of gross negligence or willful misconduct on the part of Ricks. Thus, the trial court determined the JOA's exculpatory clause was applicable and no liability resulted from the mistake. The trial court also denied Matrix's motion to file a second amended complaint, stating that Matrix had not requested a hearing on the motion and had not brought its motion to the

court's attention until ten days before trial. This appeal followed.

## DISCUSSION

{8} Matrix raises four main issues on appeal: (1) that it is entitled to equitable relief because it was not given proper notice of the Burrus No. 3 well; (2) alternatively, that it is entitled to contract damages because Defendants breached the JOA and were not shielded by the exculpatory clause in the JOA; (3) that it was entitled to amend its complaint; and (4) that it is entitled to remand for consideration of the issues in the amended complaint.

{9} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. The issue on appeal is whether [the defendant] was entitled to [judgment] ... as a matter of law. We review these legal questions de novo." *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582 (citations omitted). Summary judgment is proper where there is no evidence raising a reasonable doubt that a genuine issue of material fact exists. *Cates v. Regents of the N.M. Inst. of Mining & Tech.*, 1998–NMSC–002, ¶ 9, 124 N.M. 633, 954 P.2d 65.

### Matrix's Claim for Equitable Accounting

{10} Matrix argued below, and now on appeal, that it is entitled in equity to an accounting of its interest in the mineral estate because it never received notice of the drilling of the Burrus No. 3 well because the well was actually drilled approximately 500 feet from the intended location of the well described in the notice. Matrix contends that without notice, it had no opportunity to participate in the drilling operation and cannot be subject to the penalty provision of the JOA. *See Nearburg*, 1997–NMCA–069, ¶ 17, 123 N.M. 526, 943 P.2d 560 (stating that the penalty provision is a "covenant triggered by a condition precedent," namely, "the election not to participate in the proposed operation"). Defendants respond that the notice complied with the JOA and gave Matrix notice of Ricks' intent to drill.

{11} The JOA describes the procedure for notifying parties to the agreement of subsequent operations as follows:

Should any party hereto desire to drill any well on the Contract Area other than the well provided for in Article VI.A., or to rework, deepen or plug back a dry hole drilled at the joint expense of all parties or a well jointly owned by all the parties and not then producing in paying quantities, the party desiring to drill, rework, deepen or plug back such a well shall give the other parties written notice of the proposed operation, specifying the work to be performed, the location, proposed depth, objective formation and the estimated cost of the operation.

There was no dispute about this notice requirement in the JOA. There was also no dispute that Ricks sent a notice to the parties to the JOA, proposing to drill a well described as Burrus No. 3, no dispute that Matrix declined to participate in the operation, and no dispute that the well was not drilled in the precise location intended as described in the notice. Matrix contends the discrepancy invalidates the notice while Defendants contend the discrepancy is not one of notice, but whether the drilling operation itself was properly conducted in compliance with the notice that was given.

{12} Matrix refers to several cases from other jurisdictions in support of its argument that the notice was deficient. Matrix does not specifically analyze how these cases relate to the current facts before us, and we are not persuaded by the holdings of these cases because they are grounded in very different facts. For example, in *Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 330 (Tex.Ct.App.2001), the operator notified the working interest owners that a "well had ceased production and that the lease would terminate if production did not resume" and proposed a cleaning operation. However, that operator never conducted the cleaning operation, and a different operator began its own cleaning operation without providing separate notice. *Id.* At issue in *Stable Energy, L.P.* was whether the work of the second operator was the same as that proposed by the first operator, for the

purposes of determining the rights of a party who had consented to the initial operation. *Id.* at 330–33. The court concluded that notice of the first operation did not constitute notice of the second because, as the court determined, the operations were different. While discussions were still in progress regarding the initially proposed operation, another operator began a separate, more expensive cleaning operation. *Id.* at 332–33. In this case, in contrast, one operator notified all parties of one operation.

{13} The other cases cited by Matrix are similarly unpersuasive. In *Dorsett v. Valence Operating Co.*, 111 S.W.3d 224, 230 (Tex.Ct.App.2003), at issue was the timeliness of a notice when an operator began operations before providing the required thirty days notice to non-operators. In *AcadiEnergy, Inc. v. McCord Exploration Co.*, 596 So.2d 1334, 1342 (La.Ct.App.1992), one of the parties to a JOA was not provided with information it requested in order to decide whether to participate in a drilling operation. In *Hamilton v. Texas Oil & Gas Corp.*, 648 S.W.2d 316, 323–24 (Tex.Ct.App.1982), the operator intentionally changed the drilling location without notifying the other parties to the operating agreement, conduct which the jury found constituted gross negligence in the operation of the well. In our view, *Hamilton* adds support to Defendants' position that any error in this case was not in the notice provided but in performing the drilling operation. As noted above, the *Hamilton* jury found that an intentional change in the location of a well demonstrated gross negligence in the operation of the well. Finally, in *El Paso Production Co. v. Valence Operating Co.*, 112 S.W.3d 616, 623 (Tex.Ct.App. 2003), it was undisputed that the operator did not give written notice of a drilling operation.

{14} The undisputed facts in this case demonstrate that Ricks, the operator, gave Matrix notice of its intent to drill the Burrus No. 3 well at an intended location, triggering the requirement that Matrix either choose or decline to participate in the operation. As we wrote in *Nearburg*, when Matrix declined to participate, it agreed "to temporarily relinquish the specified amount of its interest in production in exchange for the consenting

party bearing the risk of the operation." *Nearburg*, 1997–NMCA–069, ¶ 17, 123 N.M. 526, 943 P.2d 560. We therefore agree with the trial court's conclusion that there was no dispute about the material fact that Ricks gave Matrix notice of the drilling operation, as required by the JOA, and that any subsequent error that occurred was in performing the drilling operation itself. Accordingly, because Ricks provided Matrix with the required notice of the drilling operation, and because Matrix declined to participate in the drilling operation, we hold that Matrix temporarily relinquished its interest in the mineral estate in accordance with the terms of the JOA. The trial court properly granted summary judgment on Matrix's claim for an accounting.

**Matrix's Alternative Claims for Breach of Contract and for Non-enforcement of the Exculpatory Clause**

█ {15} Matrix alternatively argues that by failing to provide notice of the actual location of the Burrus No. 3 well, Ricks breached the notice requirement in the JOA and damaged Matrix by depleting the mineral estate. Because we have concluded that Ricks properly gave notice to Matrix, this argument fails.

{16} Matrix then turns its attention to the JOA's exculpatory clause. It asserts first that the clause does not apply to actions for breach of contract, but only to actions in tort. However, because the trial court correctly ruled that there was no breach of the JOA's notice provision, this argument is moot. Matrix next appears to argue that, even if the error in locating the well occurred during the drilling operation, the clause does not shield Ricks from liability for such error because the clause protects only the operator, and Ricks was not acting as the operator. The exculpatory clause reads as follows:

> Ricks Exploration, Inc. shall be the Operator of the Contract Area, and shall conduct and direct and have full control of all operations on the Contract Area as permitted and required by, and within the limits of this agreement. It shall conduct all such operations in a good and workmanlike manner, but it shall have no liability as

Operator to the other parties for losses sustained or liabilities incurred, except such as may result from gross negligence or willful misconduct.

{17} As we understand them, Matrix's arguments are as follows: the exculpatory clause only protects operators; the JOA states that "any party" to the JOA (including a nonoperator) who wants to drill a well must give written notice to the other parties and that, consequently, giving notice (or failing to give notice) is not a function of the operator; therefore, when Ricks failed to give notice of its intent to drill, it was not acting as the operator and is not shielded from liability by the exculpatory clause. In addition, relying on *Commercial Warehouse Co. v. Hyder Brothers, Inc.*, 75 N.M. 792, 798, 411 P.2d 978, 984 (1965), Matrix contends that exculpatory clauses are disfavored in New Mexico and are to be strictly construed.

{18} We note that although the parties disagree about the scope of protection afforded by the exculpatory clause, neither party argues that it is ambiguous. Accordingly, this is a question of law that we review de novo. *See Nearburg*, 1997–NMCA–069, ¶ 7, 123 N.M. 526, 943 P.2d 560 ("Interpretation of an unambiguous contract is a question of law which we review de novo."). Both parties appear to agree that the clause exculpates an operator from liability for any losses that occur during operations except those resulting from gross negligence or willful misconduct, and the plain language of the clause supports such an interpretation. *See Stine v. Marathon Oil Co.*, 976 F.2d 254, 260 (5th Cir.1992) (stating an identical exculpatory clause is clear and unambiguous). We think Matrix's argument that Ricks was not acting as an operator depends on a strained reading of the JOA. As we stated in our discussion of the notice issue, the error in this case occurred not in the notice, but in the course of the drilling operation when Defendant Ricks was acting as an operator. The error occurred after notice had been given and after Matrix had declined to participate in the drilling operation. The question thus becomes whether Ricks' error in the location of the well constituted gross negligence or willful misconduct.

{19} We agree with the trial court that "[t]he facts are undisputed that the discrepancy in the location of the Burrus # 3 well resulted from an honest, unintended, non-negligent mistake during operations that does not rise to the level of gross negligence or willful misconduct." Matrix presented no evidence supporting an alternative conclusion. We therefore hold the trial court correctly concluded that Ricks is shielded by the exculpatory clause from liability for any losses caused during operations.

**Motion to Amend**

{20} Matrix argues that the trial court should have granted it leave to amend its complaint to include claims for gross negligence and conversion. As Defendants point out the court did not, strictly speaking, deny this motion, but refused to consider it because Matrix failed to file a request for a hearing under LR 5–701 NMRA 2004 and did not draw the trial court's attention to the matter until the hearing on the motion to dismiss, ten days before the case was set for trial. However, as Defendants acknowledge, the effect of the trial court's ruling was to deny the motion to amend.

{21} Under Rule 1–015(A) NMRA 2004, once an answer has been filed, the decision to allow an amended complaint rests solely within the sound discretion of the trial court. *Schmitz v. Smentowski* 109 N.M. 386, 390, 785 P.2d 726, 730 (1990); *Vernon Co. v. Reed,* 78 N.M. 554, 555, 434 P.2d 376, 377 (1967). Although the Rule expressly states that amendments should be liberally allowed, the "den[ial of] permission to amend is subject to review only for a clear abuse of discretion." *Id.; Schmitz,* 109 N.M. at 390, 785 P.2d at 730. "[A]n abuse of discretion is said to occur when the court exceeds the bounds of reason, all the circumstances before it being considered." *Clancy v. Gooding,* 98 N.M. 252, 255, 647 P.2d 885, 888 (Ct.App.1982) (internal quotation marks and citation omitted).

{22} The trial court denied Matrix's motion to file a second amended complaint on the ground that Matrix had not requested a hearing on its motion and had brought the motion before the trial court only ten days before trial on March 21, 2003. Matrix argues that its failure to request a hearing in a timely manner does not justify the court's decision and that, under *Crumpacker v. DeNaples,* 1998–NMCA–169, ¶ 17, 126 N.M. 288, 968 P.2d 799, in order to prevail in opposing the motion, Defendants were required to show that they would have been prejudiced by the amendment. As Defendants point out, however, they had argued in their opposition to Matrix's motion that they would be prejudiced by the motion to amend because discovery was complete and depositions would have to be retaken.

{23} In addition, because Matrix did not alert the trial court's attention to the motion to amend until ten days before the case was set to go to trial, the trial court's decision to deny the motion to amend was reasonable, and we find no clear abuse of discretion under these facts. *See Slide–A–Ride of Las Cruces, Inc. v. Citizens Bank of Las Cruces,* 105 N.M. 433, 436–37, 733 P.2d 1316, 1320–21 (1987) (finding no abuse of discretion in trial court's denial of second motion to amend under facts of that case when two years had elapsed from filing of complaint, discovery was almost complete, and case had been set for trial three times).

{24} In light of our holdings that Ricks complied with the notice requirement of the JOA, that the exculpatory clause shielded Ricks from liability, and that the trial court did not clearly abuse its discretion in denying Matrix's motion to amend, we do not address Matrix's request that we remand its conversion and gross negligence claims.

**CONCLUSION**

{25} For the foregoing reasons, we hold that the trial court correctly ruled that no issues of material fact existed in connection with Matrix's claims for an accounting and breach of the JOA and that Defendants were entitled to judgment as a matter of law. Accordingly, we affirm the grant of summary judgment.

{26} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON and MICHAEL E. VIGIL, Judges.