2006-NMCA-034

131 P.3d 661

Jessie KRIEGER, Plaintiff,

v.

The WILSON CORPORATION,
Defendant and Third–Party
Plaintiff–Appellant,

v.

Allstate Insurance Company, and Bar-
bara Stevens, d/b/a Hooter Browns,
Third–Party Defendants–Appellees.

Nos. 24,421, 24,497.

Court of Appeals of New Mexico.

Nov. 30, 2005.

Certiorari Granted, No. 29,598,
March 23, 2006.

Stephen E. McIlwain, Albuquerque, NM, for Plaintiff.

Comeau, Maldegen, Templeman & Indall, LLP, Stephen J. Lauer, Grey W. Handy, Sharon W. Horndeski, Santa Fe, NM, for Defendant and Third–Party Plaintiff–Appellant.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Lisa Mann, Jennifer A. Noya, Albuquerque, NM, for Third–Party Defendant–Appellee Allstate Insurance Company.

The Hone Law Firm, P.C., Jay R. Hone, Albuquerque, NM, for Third–Party Defendant–Appellee Barbara Stevens.

## OPINION

BUSTAMANTE, Chief Judge.

{1} This case involves two consolidated appeals by The Wilson Corporation (Wilson) against Barbara Stevens, d/b/a Hooter Browns Restaurant (Lessee), the owner of a restaurant located in Wilson's building, and Lessee's insurance company, Allstate Insurance Company (Allstate). The basic issue is whether an indemnification provision in the restaurant lease creates or-under the circumstances present here-may create actionable obligations in the Lessee and Allstate to defend Wilson from a tort action brought by a restaurant patron. Complicating the analysis somewhat is that it is unclear from the record exactly where on Wilson's premises the injury occurred. Applying settled principles of contract interpretation and civil procedure, we decide that the district court prematurely dismissed some of Wilson's claims. We affirm in part and reverse in part.

## I. BACKGROUND

{2} Jessie Krieger visited Hooter Browns Restaurant (restaurant) in May 2000. Krieger filed a complaint for personal injuries against Wilson, the owner of the building and adjacent parking area, for damages suffered in a fall. Krieger's complaint alleged she stepped into a "hole or other defect in the paving located within or near the parking lot" of the restaurant. Wilson requested a defense and indemnification from Lessee and Allstate. Both denied the request. Wilson eventually settled the claim with Krieger. In the meantime, Wilson filed a third-party complaint for contractual indemnification, breach of contract, negligence, and a declaratory judgment against the Lessee and Allstate.

{3} Allstate moved for summary judgment pursuant to Rule 1–056(A) NMRA on the grounds that Wilson was not an Allstate insured at the time Krieger's accident occurred, and that the Lease did not otherwise create insurance coverage for Wilson. Allstate alleged that Lessee did not add Wilson as an additional named insured under the policy until 2002, two years after Krieger's accident. Wilson asserted it was unaware that it was not named as an additional insured at the time the original third-party complaint was filed. At the hearing on Allstate's motion for summary judgment, Allstate emphasized a new argument: that the injury occurred outside the physical area covered by the Lease and that therefore there was and could be no coverage under Lessee's policy. The district court granted Allstate's motion for summary judgment.

{4} Lessee moved for dismissal pursuant to Rule 1–012(B)(6) NMRA. The district court granted Lessee's motion to dismiss, and at the same time denied Wilson's motion for leave to amend its complaint to allege that Lessee failed to list Wilson as an additional insured on the insurance policy. At the hearing on the motion, the district court reasoned "[t]here's nothing in this lease that places the liability for any accidents which occur in the parking lot with the third party defendant, [Lessee]."

{5} These two appeals followed. We discuss each of Wilson's appeals in turn, beginning with its case against Lessee. We provide details on the Lease and insurance provisions in our discussion below.

## II. *WILSON V. LESSEE*

{6} Wilson's claims against Lessee include contractual indemnification, breach of contract, violation of the Unfair Practices Act (UPA), and negligence. The UPA claims have been abandoned on appeal. Wilson argues that the district court erred in granting the motion to dismiss for several reasons, including: the Lease required Lessee to indemnify Wilson for claims based on injuries such as those sustained by Krieger; there are facts provable which would entitle Wilson to relief under the indemnification provision; Wilson has a viable claim against Lessee for breach of contract for failure to procure insurance; and the claim of negligence was adequately plead. We begin with the negligence claim, then discuss the claim for contractual indemnification and the breach of contract claims.

{7} We review a dismissal pursuant to Rule 1–012(B)(6) de novo. *Young v. Van Duyne*, 2004–NMCA–074, ¶ 13, 135 N.M. 695, 92 P.3d 1269. "A motion to dismiss pursuant to [Rule] 1–012(B)(6) tests the legal sufficiency of the complaint. In reviewing an order granting a motion to dismiss, we accept as true all facts properly pleaded." *Rummel v. Edgemont Realty Partners, Ltd.*, 116 N.M. 23, 25, 859 P.2d 491, 493 (Ct.App.1993) (citation omitted). "A complaint should not be dismissed unless there is a total failure to allege some matter essential to the relief sought." *Healthsource, Inc. v. X–Ray Assocs. of N.M.*, 2005–NMCA–097, ¶ 16, 138 N.M. 70, 116 P.3d 861.

### A. NEGLIGENCE

{8} To determine whether Wilson's allegations state a claim for negligence against Lessee, we accept all well-pleaded facts as true and consider whether Wilson might prevail under any state of facts provable under the claim. *See id.* Wilson alleges that Lessee, as the occupant and operator of the restaurant, owed a duty to business visitors to use ordinary care to keep the premis-

es safe for use by such visitors. Wilson argues that if it is found negligent with respect to Krieger in the underlying personal injury claim, it should be determined that Lessee, as the occupant and operator of the restaurant, should also be found negligent.

{9} The claim of negligence fails for several reasons, but we need not get beyond the first element, duty. The complaint is void of any allegations of a duty of care owed by Lessee to Wilson. *See Bober v. N.M. State Fair*, 111 N.M. 644, 653, 808 P.2d 614, 623 (1991) (stating that the "injured [party's] complaint must allege at least *some* facts ... giving rise to invocation of [a] duty in [the] particular case"); *Blake v. Pub. Serv. Co. of N.M.*, 2004–NMCA–002, ¶ 6, 134 N.M. 789, 82 P.3d 960 (stating that the question of whether a duty exists turns on whether a relationship existed by which defendant was legally obliged to protect the interest of plaintiff). The complaint alleges that Lessee "owed a duty to *business visitors* to use ordinary care to keep the premises safe." (Emphasis added.) There is no factual allegation that Lessee owed a duty to Wilson, that Lessee breached the duty, or that damages flowed from such a breach. Wilson is saying that if Lessee's negligence injures a third party, and Wilson suffers damages as a result of the third party's injuries, then Lessee is negligent as to Wilson. What Wilson alleges in the claim for negligence is no more than another indemnification claim. Such allegations fail to state a claim for negligence. We affirm the dismissal of Wilson's claim of negligence against Lessee.

## B. CONTRACTUAL INDEMNIFICATION

{10} Wilson argues that as a condition of leasing the premises, Lessee undertook to indemnify it for any bodily injuries to its patrons arising out of the operation of the restaurant, no matter where or how those injuries occurred. Wilson entered into a Lease with Carla Grim which was subsequently assigned to Barbara Stevens, d/b/a Hooter Browns. Wilson argues that the following provisions of the Lease establish the obligation to indemnify it:

3. ... Lessee agrees to keep and maintain the premises in a clean and safe condition....

   ....

10. Lessee further agrees to indemnify and hold Lessor and its officers, directors, employees and agents harmless from any and all claims, liens, suits, causes of action, damages, costs, taxes, and expenses, including, but not by way of limitation, expenses of litigation, court costs and attorney fees, incurred, arising, or in any way resulting from Lessee's activities, actions, or omissions or the actions of any of her agents, employees, guests, invitees, or licensees. This indemnity shall survive the termination of this agreement for any reason, and neither final payment of all rentals nor acceptance of such payments by Lessor shall constitute a waiver of the foregoing indemnity provision.

The Lease also provides that "[t]he Lessor does hereby ... lease unto the Lessee the restaurant portion only of the Lessor's building at the B & W Truck Stop."

{11} The district court granted Lessee's motion to dismiss reasoning that "[t]here's nothing in this lease that places the liability for any accidents which occur in the parking lot with the third party defendant, [Lessee]." With regard to the issue of breach of contract, the district court stated:

> Now, the Wilson Corporation may have a cause of action against her enforcing her to obtain an insurance policy naming the Wilson Corporation. But as I see the lease agreement, it would mean that they would be liable as it says, in Paragraph 10, *for anything or any activities, actions or omissions by lessee or any of its employees or agents*. But it does not extend, as far as I can see, to the parking lot. Because it limits it to the actions—to the activities and to the omissions.

The district court apparently concluded that Lessee had no obligation under the indemnity clause for anything occurring outside the restaurant.

{12} To rule as a matter of law that the motion to dismiss should be granted be-

cause Lessee had no responsibility under the Lease for areas outside the restaurant, the district court had to find that the language of the indemnity provision together with other provisions of the Lease was so clear that no reasonable person could interpret it in any other way. *See C.R. Anthony Co. v. Loretto Mall Partners,* 112 N.M. 504, 510, 817 P.2d 238, 244 (1991). Whether a contractual provision is susceptible to reasonable but conflicting meanings, that is, whether there is a lack of clarity or ambiguity, is a question of law. *Id.* at 509, 817 P.2d at 243. In the absence of ambiguity, the interpretation of language in a contract is an issue of law which we review de novo. *Id.* at 510, 817 P.2d at 244. Where contractual language is "susceptible of conflicting inferences, the ultimate factual issues must be resolved by the appropriate fact finder with the benefit of a full evidentiary hearing." *Id.* at 510, 817 P.2d at 244.

{13} We apply the general rules of contract construction in determining the meaning of the language used in indemnity contracts and clauses. *Arkansas Kraft Corp. v. Boyed Sanders Constr. Co.,* 298 Ark. 36, 764 S.W.2d 452, 453 (1989); *Oddo v. Speedway Scaffold Co.,* 233 Neb. 1, 443 N.W.2d 596, 602 (1989). "A contract must be construed as a harmonious whole, and every word or phrase must be given meaning and significance according to its importance in the context of the whole contract." *Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc.,* 2004–NMCA–063, ¶ 14, 135 N.M. 607, 92 P.3d 53 (internal quotation marks and citation omitted). We balance these principles of general contract construction with the rules of construction for commercial leases that call for the court to construe ambiguity, if any exists, against the landlord and drafter. *L.R. Prop. Mgmt., Inc. v. Grebe,* 96 N.M. 22, 24, 627 P.2d 864, 866 (1981).

{14} Lessee accurately notes that whether the language in the Lease is broad enough to encompass Krieger's accident as a customer of the restaurant is a question of first impression in New Mexico. Our courts have interpreted the phrase "arising or in any way resulting from" broadly in the insurance context. In *Baca v. New Mexico State Highway Department,* 82 N.M. 689, 692, 486 P.2d 625,

628 (Ct.App.1971), we stated, "[t]he words 'arising out of' are very broad, general and comprehensive terms, ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.'" *See also Servants of the Paraclete, Inc. v. Great Am. Ins. Co.,* 857 F.Supp. 822, 836–37 (D.N.M.1994) (holding that the injury " 'arose' out of the use of the premises" if there was some causal connection or a sufficient nexus between the ownership, maintenance, or use of the premises and the injuries sustained). But our courts have not interpreted this language in the context of a lease.

{15} Other jurisdictions have given a broad interpretation to similar language in indemnity provisions. *See N.P.P. Contractors, Inc. v. John Canning & Co.,* 715 A.2d 139, 140–42 (D.C.1998) (holding that an indemnity clause applicable to "any and all claims and liabilities ... arising out of or resulting from or in connection with the execution of the work" was "so broad and sweeping" as to cover damages incurred, and was unambiguous and enforceable (internal quotation marks and citation omitted)); *Rios v. Field,* 132 Ill.App.2d 519, 270 N.E.2d 98, 101 (1971) (holding that the phrase "resulting from" in a lease merely requires that the lessee's use of the premises be "the occasion for, as opposed to the cause of, the injury"); *see also Myers v. ANR Pipeline Co.,* 959 F.2d 1443, 1446–47 (8th Cir.1992) (indicating that the "any and all claims" language may justify the conclusion that "absolute indemnification was intended").

{16} Lessee urges us to adopt a more strict approach, asserting that indemnity clauses generally should be construed against the indemnitee. *Vitty v. D.C.P. Corp.,* 268 N.J.Super. 447, 633 A.2d 1040, 1042 (1993); *Lynch v. Santa Fe Nat'l Bank,* 97 N.M. 554, 556, 627 P.2d 1247, 1249 (Ct.App.1981) (holding exculpatory clauses should be strictly construed against the promisee). We decline to decide the issue in this case, because even under a strict approach, we conclude that the language in the Lease is broad enough for Wilson to state a claim. The record involving the injury to Krieger is limited to the information in Krieger's complaint. The only facts relating to the injury are that Krieger

was a visitor to the restaurant, a dangerous condition existed on the premises consisting of a hole or other defect in the paving located within or near the parking lot, and Krieger was injured by stepping into the hole or defect. On the limited information before us, it is not possible to rule as a matter of law that the language in the indemnity provision was so clear that no reasonable person would determine the issue in any way other than limiting coverage to injuries occurring in the restaurant portion only. *See C.R. Anthony Co.*, 112 N.M. at 510, 817 P.2d at 244.

{17} The intentions of the parties as to the meaning of the indemnification provision is subject to further factual development. The first relevant inquiry is the intention of Wilson and Grim, who was the original lessee. *See id.* at 508–09, 817 P.2d at 242–43 (stating that what is relevant in determining whether any term or provision of the lease is unclear is evidence of the circumstances surrounding the making of the lease). On remand, the district court is not limited to the four corners of the contract in deciding the meaning of the language in the Lease, and "extrinsic evidence may be offered to aid the court in the threshold determination involving the interpretation of contract terms." *Id.* at 510, 817 P.2d at 244. The parties have not addressed whether any factual background is available or appropriate.

{18} We now address Lessee's argument that even if the indemnity provision is broad enough to cover claims arising from the parking lot area, it does not serve to indemnify Wilson for its own negligence. New Mexico has adopted the rule that there must be a clear and unequivocal intent by the parties for an indemnitee to be held harmless for his own negligence. *Metro. Paving Co. v. Gordon Herkenhoff & Assocs.*, 66 N.M. 41, 43, 341 P.2d 460, 461 (1959). Other jurisdictions that have addressed the issue have held that where the indemnity clause in an agreement contains a hold harmless provision, and there is a requirement for the indemnitor to obtain insurance and name the other party as an additional insured, it is clear the parties intended that the indemnitee will be indemnified against his own negli-

gence. *See Myers*, 959 F.2d at 1448 (stating that absolute indemnity is the intention when an agreement contains both hold harmless and insurance provisions). The court in *Bridston v. Dover Corp.*, 352 N.W.2d 194 (N.D.1984) held that where the agreement had "save harmless" language, and the indemnitee was to be held harmless for "*any and all claims for loss*" without limitation, together with a requirement that the indemnitor obtain liability insurance naming the indemnitee as an additional insured, the parties intended indemnification for indemnitee's own negligence. *Id.* at 197 (internal quotation marks omitted).

{19} Although not identical to the Lease here, the provisions dealt with in these other cases are sufficiently similar to provide guidance. The Lease includes "hold harmless" language and also requires Lessee to procure liability insurance naming Wilson as an additional insured. There are no limitations in the indemnity provision excluding coverage for Wilson's negligence. Given the broad language of the indemnity provision, we cannot say that as a matter of law the provision excludes coverage for Wilson's own negligence. However, neither can we say that the provision provides coverage for Wilson based on the limited facts before us in the record. Resolution of this issue awaits further litigation on remand. Of course, we do not address whether Wilson was in fact negligent because that issue is not before us.

{20} We conclude, after reviewing the Lease and the third-party complaint, that the district court erred in dismissing the claim for contractual indemnification. We cannot say as a matter of law that the Lease is susceptible to only one reasonable interpretation. The Lease requires Lessee to hold Wilson harmless "from *any and all claims* ... including ... expenses of litigation ... *arising, or in any way resulting from* Lessee's activities." (Emphasis added.) Although the Lease is for the restaurant portion only of the truck stop, there is no language limiting the agreement to hold harmless and indemnify to claims physically occurring within the leased premises only. Neither is the duty to indemnify limited to claims caused by the negligence of Lessee.

The language requires that Wilson be held harmless from any and all claims, with no geographical or party-defendant limitation. We conclude that Wilson's complaint states a claim for contractual indemnification upon which relief can be granted, therefore we reverse and remand.

## C. BREACH OF CONTRACT

{21} Again we look to the allegations in the amended third-party complaint against Lessee to determine whether Wilson has stated a claim upon which relief can be granted, testing only the legal sufficiency of the complaint. *Healthsource, Inc.*, 2005-NMCA-097, ¶ 16, 138 N.M. 70, 116 P.3d 861.

## 1. SUBSTITUTE PERFORMANCE

{22} The Lease required Lessee to procure general commercial liability insurance, and to list Wilson as a named additional insured on the policy. We recite the exact language of the complaint here because it becomes relevant to arguments made by the parties. Wilson alleges that Lessee "procured commercial liability insurance coverage from Third-Party Defendant Allstate, but Allstate has failed to honor its insuring obligations to Wilson ... in this regard." Wilson then alleges that "[Lessee's] attendant failure to provide substitute performance or to otherwise defend and indemnify Wilson ... in connection with the underlying action, constitutes a breach of the Lease Agreement's provisions." In fact, Lessee procured liability insurance, but failed to name Wilson as an additional named insured until two years after Krieger's accident. Wilson moved to amend the complaint for breach of contract to specify more precisely how Lessee allegedly breached the Lease by failing to procure insurance. The district court denied the motion for leave to amend, apparently deciding an amendment would be futile. The district court found that even if Wilson had been named as an additional insured, no coverage was available.

{23} The district court properly dismissed Wilson's breach of contract for failure to provide a substitute performance claim as plead. Wilson essentially alleges that Lessee breached the contract by failing to provide substitute performance when Allstate denied its request to defend and indemnify on Krieger's claims. This claim fails because there is no language in the Lease that requires Lessee to provide substitute performance. *See id.* ¶¶ 18-19 (dismissal affirmed where record revealed there was no agreement, therefore there could be no breach). The language of the complaint indicates that the claim for substitute performance is based on Allstate's denial of coverage for Wilson, allegedly a named insured under the policy. The problem is that Wilson, in fact, was not a named insured under the policy at the time Krieger was injured. Lessee cannot be held liable for substitute performance as plead, based on Allstate's failure to indemnify and defend Wilson as a named insured when Wilson was not named on the policy. However, the problem with the complaint can be cured through leave to amend, which we discuss below. We now must consider whether the district court erred in denying Wilson's request for leave to amend, and if so, whether a breach for failure to procure insurance is itself actionable.

## 2. LEAVE TO AMEND

{24} Rule 1-015(A) NMRA provides that leave to amend pleadings shall be "freely given when justice so requires," and the district court is required to allow it if the objecting party fails to show they will be prejudiced. *Schmitz v. Smentowski*, 109 N.M. 386, 390, 785 P.2d 726, 730 (1990). A party ought to be afforded an opportunity to test its claim on the merits, and amendment should be allowed in the absence of a showing of dilatory faith, undue delay, bad motive on the part of the movant, repeated failure to cure deficiencies by previous amendments, undue prejudice to opposing party, or futility of the amendment. *Crumpacker v. DeNaples*, 1998-NMCA-169, ¶ 18, 126 N.M. 288, 968 P.2d 799 (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). This Court reviews the denial of a motion for leave to amend for an abuse of discretion. *Id.* ¶ 16. An abuse of discretion occurs "when the court exceeds the bounds of reason, all the circumstances before it being considered." *Matrix Prod. Co. v.*

*Ricks Exploration, Inc.,* 2004–NMCA–135, ¶ 21, 136 N.M. 593, 102 P.3d 1285 (internal quotation marks and citation omitted).

{25} The district court did not indicate a reason for denying leave to amend in its order. However, in reviewing the transcript of the proceedings below, it appears the district court's decision was based on futility. The district court reasoned:

> Now, the way I read the claim for breach of contract, . . . [i]f there's a breach of contract by the Wilson Corporation against [Lessee], it would be for the failure of providing an insurance policy for her portion of the liabilities.
>
> If she's not liable for any of the injuries incurred because of the lease itself, then regardless of the fact that she has named the Wilson Corporation . . . in any insurance contract that she purchases, the way I see it means nothing if she's not liable for that accident and that injury.

The district court went on to state that Wilson may have a cause of action against Lessee to force her to obtain the required insurance policy, but denied Wilson's motion to amend. The district court appears to have decided that even if Wilson was a named insured, Wilson would not be covered for an injury that occurred in the parking lot. In other words the district court apparently decided Lessee could not be liable to Wilson for an injury to a restaurant patron occurring in the parking lot, either with or without insurance coverage.

{26} We note that Lessee did not argue that she would be prejudiced by the amendment, and the record does not reveal any other basis for denying the motion to amend. We reverse the denial of Wilson's request for leave to amend.

## 3. FAILURE TO PROCURE INSURANCE

{27} Wilson argues that a claim for Lessee's failure to obtain insurance covering Wilson is actionable. Such a claim is generally actionable under New Mexico law. *See Lommori v. Milner Hotels, Inc.,* 63 N.M. 342, 351, 319 P.2d 949, 955–56 (1957) (stating that where a clause requires lessee to carry liability insurance for the benefit of both the lessor and lessee, so that both should be protected under the requirements of the covenant and any policy provided by the lessee, lessee is liable to lessor for failure to meet the requirements to obtain insurance). Again, the issue is whether the language in the complaint adequately pleaded this cause of action; and, if not whether amendment was improperly denied. We need not decide the issue as such because, as previously discussed, Wilson should be permitted to amend its complaint on remand to adequately reflect the claim for breach of contract for failure to procure insurance.

{28} Lessee argues that leave to amend was properly denied because Wilson was not damaged by the alleged breach in that Allstate would be under no obligation to defend or indemnify Wilson from Krieger's complaint–whether or not Lessee had added Wilson to the policy–since Krieger's injury did not occur on the leased premises. Contrary to Lessee's position, we have decided that the scope of the indemnity provision has yet to be determined. If it is determined that the indemnity provision covers Krieger's accident, Wilson will have been damaged by Lessee's failure to indemnify, and Allstate's failure to defend and indemnify. This must be decided on remand.

## III. WILSON V. ALLSTATE

{29} Wilson's amended third-party complaint sought a declaratory judgment that Allstate was required to provide a defense and pay all damages paid to Krieger by Wilson. The complaint also alleged breach of the implied covenant of good faith and fair dealing. The district court granted summary judgment in favor of Allstate. Wilson moved for reconsideration, arguing that Allstate made an entirely different argument at the hearing than it set forth in its motion and memorandum in support of summary judgment. The district court denied the motion for reconsideration. On appeal, Wilson argues that the district court erred in granting summary judgment because: (1) Wilson is an additional insured under the Allstate policy; (2) if the policy is ambiguous, Wilson is entitled to coverage under the reasonable expec-

tations doctrine; (3) the policy covers off-premises accidents; and (4) it was improper to grant summary judgment based on an argument raised for the first time at the motion hearing. Because we reverse and remand on the coverage issue, we do not address Wilson's last argument.

{30} We review the grant of a motion for summary judgment to determine "whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law." *Williams v. Cent. Consol. Sch. Dist.*, 1998–NMCA–006, ¶ 7, 124 N.M. 488, 952 P.2d 978. "[W]e examine the whole record for any evidence that places a genuine issue of material fact in dispute." *Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 15, 123 N.M. 752, 945 P.2d 970. The issue on appeal is whether the defendant was entitled to judgment as a matter of law, and we review this legal question de novo. *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Furthermore, the interpretation of an insurance contract is a matter of law, which we review de novo. *Rummel*, 1997–NMSC–041, ¶ 60, 123 N.M. 752, 945 P.2d 970.

{31} Wilson argues that the Allstate policy, standing alone, is sufficient to trigger coverage for Wilson as an "additional insured," even if it was not a "named additional insured" under the policy. In the complaint, Wilson sought coverage from Allstate because Wilson believed Lessee had procured commercial general liability insurance and named Wilson as an additional insured. Discovering later that Lessee had not obtained the required insurance at the time of Krieger's accident, Wilson contends that it is still entitled to coverage, though under a different provision of the policy. We begin by looking at the language of the policy in effect at the time of Krieger's accident.

{32} "[I]nsurance contracts are construed by the same principles which govern the interpretation of all contracts." *Id.* ¶ 18 (internal quotation marks and citation omitted). The insurance contract is reviewed as a whole, starting with the language of the agreement itself. *Id.* ¶ 20. The question of whether a contractual term is susceptible to reasonable but conflicting meaning is one of law. *C.R. Anthony Co.*, 112 N.M. at 509, 817 P.2d at 243. Where the language is "so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law." *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993). However, if the court determines that the contract is reasonably and fairly susceptible to different interpretations, and the proffered evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible to conflicting inferences, the meaning must be resolved by the appropriate fact finder. *Id.* In such a case, the grant of summary judgment would be improper. An ambiguity is not established simply because the parties disagree on the proper interpretation. *Trujillo v. CS Cattle Co.*, 109 N.M. 705, 709, 790 P.2d 502, 506 (1990).

{33} When evaluating competing interpretations of a policy, the appellate court views the language of the policy from the standpoint of "a hypothetical reasonable insured." *Computer Corner, Inc. v. Fireman's Fund Ins. Co.*, 2002–NMCA–054, ¶¶ 7, 13, 132 N.M. 264, 46 P.3d 1264. The question a court should ask itself initially is what understanding a reasonably intelligent lay person might glean from the policy, in light of the usual meaning of the words and the circumstances contemporaneous with the making of the policy. *Id.* ¶ 7. Confronted with assertions of conflicting interpretations, courts should look first to the language itself. If the parties do not offer extrinsic evidence probative of the issue, the appellate court may proceed to resolve the conflict as a matter of law. *Mark V, Inc.*, 114 N.M. at 782, 845 P.2d at 1236.

{34} The Allstate policy issued to Lessee provides, in relevant part:

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to

pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

. . . .

## 2. Exclusions

This insurance does not apply to:

. . . .

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

. . . .

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense had also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

. . . .

## SECTION V – DEFINITIONS

. . . .

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting form [sic] any of these at any time. . . . .

8. **"Inusred [sic] contract" means:**

a. A contract for a lease of premises . . .;

. . . .

f. That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

{35} Wilson was not a named insured under the Allstate policy at the time of Krieger's injury. In addition to the Lease and the Allstate policies, the record reflects an affidavit from an insurance agent. The insurance agent stated in the affidavit that Allstate did not intend to provide insurance coverage for Wilson prior to September 2002 when it was added as a named insured.

{36} We must determine if a genuine issue of material fact exists based on the record before us as to whether Wilson could claim the status and benefit of an insured under the policy at the time of Krieger's accident, and if Krieger's accident is one to which the insurance applies. If it is determined that Wilson was covered under the insured contract provisions, then Allstate was obligated to provide a defense for Wilson. If the injury to Krieger is one to which the insurance applies, Allstate is obligated to provide indemnification for Wilson.

{37} Wilson argues that it is entitled to coverage based on the language in the "Exclusions" clause of the policy. The policy specifically excludes coverage for contractual obligations assumed by Lessee, with some important exceptions. The policy provides that "insured contracts" are excepted from the exclusions of coverage. An insured contract, as defined by the Allstate policy, "is [a] contract for a lease of premises." In other words, a contract for a lease of premises is

excepted from the exclusions to coverage; that is, it is covered by the policy.

{38} Allstate concedes that the policy does provide coverage for liabilities Lessee assumes in an "insured contract," and that the policy defines an "insured contract" to include the Lease. Allstate argues-and we agree-that the terms of the Lease are critical in determining whether it is required to provide coverage for Krieger's claim against Wilson. Allstate contends that since the Lease specifies that Lessee leased the "restaurant portion only" of the building, the Allstate policy applies only to Lessee's obligations pertaining to the restaurant, and not injuries occurring outside the restaurant. Allstate reasons that since Lessee was only covered for the restaurant portion of the building, Wilson cannot be afforded greater coverage under the insured contract provision to areas outside the restaurant. In other words, Allstate asserts it is not obligated to provide a defense or indemnity for any injury that occurred off-premises. This brings us back to where we began in this opinion, to the language of the Lease.

{39} Wilson argues that the off-premises liability theory raised by Allstate raises a host of other fact specific issues relating to the law of premises liability, and is not appropriately decided on summary judgment. Wilson argues that under the law of premises liability in New Mexico, Lessee owes a duty of care to invitees such as Krieger beyond the leased premises, and could be liable for injuries such as those sustained by Krieger. Tenants of leased premises such as Lessee owe a duty of care to invitees for off-premises injuries under certain circumstances. See Mitchell v. C & H Transp. Co., 90 N.M. 471, 475, 565 P.2d 342, 346 (1977) (stating that an occupant or owner of a premises owes a duty of ordinary care to have the premises "in a reasonably safe condition[, including] the duty to provide an invitee with reasonably safe means of ingress and egress, both within the confines of the premises ... controlled by the inviter, and, within limitations dictated by the facts of the case, beyond the precise boundaries of such premises" (internal quotation marks and citation omitted)); Bober, 111 N.M. at 650, 808 P.2d at 620 (stating that "consistent with Mitchell, ... an occupier of land has the duty to avoid creating an unreasonable risk of harm to persons outside the land"). However, "where the landlord reserved the right to enter the leased premises to make repairs, and the landlord remains responsible to make inspections and any necessary repairs to guard against any unsafe condition." Id. at 652, 808 P.2d at 622; see also Monett v. Dona Ana County Sheriff's Posse, 114 N.M. 452, 458, 840 P.2d 599, 605 (Ct.App.1992) (stating that "an occupier of premises owes a duty to safeguard each business visitor whom the occupier reasonably may foresee could be injured by a danger avoidable through reasonable precautions available to the occupier of the premises" (internal quotation marks and citation omitted)); Klopp v. Wackenhut Corp., 113 N.M. 153, 157, 824 P.2d 293, 297 (1992) (same).

{40} However, a tenant's liability for injuries caused by defects on the premises may be limited by the degree of control exercised over that area. See Stetz v. Skaggs Drug Ctrs., Inc., 114 N.M. 465, 468, 840 P.2d 612, 615 (Ct.App.1992) (noting that "[t]he foundation of premises liability is that owners, occupiers, or possessors of premises have responsibility only for hazards arising on or from their premises"); Torres v. Piggly Wiggly Shop Rite Foods, Inc., 93 N.M. 408, 410, 600 P.2d 1198, 1200 (Ct.App.1979) (stating "a tenant in complete and sole control of leased premises is liable for any defects in those premises or for the failure to make repairs in them, absent a reservation by the landlord for common use of several tenants or a reservation by the landlord of the right to enter and make repairs"); see also Acosta v. City of Santa Fe, 2000–NMCA–092, ¶ 25, 129 N.M. 632, 11 P.3d 596 (stating that "a property owner may incur off-premises tort liability if the owner exercised control of the area upon which a tort took place or was committed").

{41} We agree with Wilson that it is not sufficient to simply say the leased premises was the restaurant only, therefore Lessee had no control over the parking lot, and therefore Lessee has no liability for Krieger's injury. Control is a factual issue, and there is little or no evidence in the record relating to control of the area where Krieg-

er's injury occurred-or even where it occurred. Significant to the inquiry of control would be to know how long the defect had been there, whether there was any agreement between Wilson and Grim or Lessee regarding the parking lot, or the actions of the parties in relation to care and use of the parking area. There are no such facts in the record, except an allegation in Krieger's original complaint that "defendant (Wilson) had prior knowledge of this dangerous condition but had done nothing to remedy the same." That allegation alone is not sufficient to establish sole control in Wilson.

{42} Wilson also relies on the indemnification provision of the Lease contending that it constitutes an insured contract which requires Allstate to provide coverage under definitional Section 8(f) of the policy. In response, Allstate argues that the indemnification provision of the Lease cannot be expanded to encompass more than the Lease itself covers, namely the "restaurant portion only" of the truck stop. We disagree. Wilson relies on *Harrah's Atlantic City, Inc. v. Harleysville Ins. Co.*, 288 N.J.Super. 152, 671 A.2d 1122 (1996) for the proposition that Allstate is obligated to provide a defense and indemnification to it for injuries arising out of Lessee's activities in running the restaurant. In *Harrah's Atlantic City, Inc.*, the issue was whether the insurer was required to defend and indemnify the landlord/owner in a personal injury suit brought against it by a patron and an employee of a tenant in the building. *Id. at 1123.* The injured parties were struck by an automobile driven by one of the landlord/owner's parking valets as they crossed the street in front of the building. *Id.* The lease in *Harrah's Atlantic City, Inc.* required the tenant to purchase liability insurance "in the name of and for the benefit of" the landlord/owner and the tenant. *Id.* (internal quotation marks omitted). The lease also included an indemnification provision. *Id.* When the tenant did not respond to the landlord/owner's request for indemnification and a defense, it filed a third-party complaint seeking indemnification under the lease. The endorsement at issue provided coverage for the landlord/tenant as an additional insured "only with respect to liability arising out of the ... use of that part of the premises leased to [tenant] and shown in the

Schedule." *Id.* at 1124 (internal quotation marks omitted). The lease in *Harrah's Atlantic City, Inc.* was thus similar to the Lease in this case.

{43} The court held that the insurer owed the landlord/owner both a defense and indemnification. *Id.* The court reasoned that the language "arising out of" the leased premises has been interpreted broadly to mean "originating from the use of or growing out of the use of the leased premises," and by using such language an "insurer ... necessarily [understands] that it [is] providing coverage to the landlord against accidents occurring outside of the leased premises." *Id.* (internal quotation marks and citation omitted). The court further reasoned that "an insurer would expect to provide coverage to a landlord under such an endorsement where there is a substantial nexus between the occurrence and the use of the leased premises." *Id.* at 1125 (internal quotation marks and citation omitted). In such cases, the landlord, like Wilson, is attempting to insure against the risk of liability generated by the business conducted by the tenant (Lessee), and place the cost of insuring that risk on the tenant (Lessee). The court went on to say that "where the landlord can trace the risk creating its liability directly to the tenant's business presence, it is not unreasonable for the landlord to expect coverage, inasmuch as it can be truly said that the accident originated from or grew out of the use of the leased premises." *Id.* Finally, the court noted that the "insurer cannot reasonably contend that it did not anticipate having to insure against an accident occurring in the course of such conduct by an invitee" of the tenant. *Id.*

{44} *Harrah's Atlantic City, Inc.* is similar to our case. There are some factual differences, but the reasoning is sound and applicable here. A plausible interpretation of the Lease is that Wilson, like *Harrah's Atlantic City, Inc.*, attempted to place the risk of liability for accidents arising out of the tenant's use of the premises on the tenant. This intent can be gleaned in the indemnification provision, and the requirement that Lessee procure liability insurance naming Wilson as an additional insured. As in *Harrah's Atlantic City, Inc.*, there is a substantial nexus between Lessee's business activities and Krieger's accident; that is, Krieger was at

the truck stop because of the restaurant. *See id.* (concluding that the requisite nexus existed between the accident and leased premises when store patron was hit by car while crossing street after leaving the store). Allstate cannot easily contend that it could not anticipate having to defend or provide coverage for Wilson given the Lease provisions and its policy's language covering insured contracts. Allstate issued the policy to Lessee to operate a restaurant. The Allstate policy specifically provides coverage for insured contracts, which are defined to include a lease. Given its coverage for insured contracts with third parties, Allstate necessarily had some knowledge of the Lease provisions and the potential for some obligations to Wilson. Allstate cannot claim it was unaware of the provisions of the Lease.

{45} Finally, Allstate contends it provides coverage to Lessee, not Wilson, and Wilson does not become an insured simply because there was an insured contract. And, Allstate argues, since Wilson is not an insured under the policy, Wilson cannot go directly against Allstate for indemnification. We hold that Wilson can bring this direct action against Allstate because, as a potential indemnitee under an insured contract, Wilson can reasonably claim to stand in the shoes of Allstate's insured. *See Marlin v. Wetzel County Bd. of Educ.,* 212 W.Va. 215, 569 S.E.2d 462, 468–69 (2002) ("In a policy for commercial general liability insurance ... when a party has an insured contract, that party stands in the same shoes as the insured for coverage purposes." (internal quotation marks and citation omitted)); *Consolidation Coal Co. v. Boston Old Colony Ins. Co.,* 203 W.Va. 385, 508 S.E.2d 102, 109 (1998) (same). The court in *Marlin* held that "the phrase 'liability assumed by the insured under any contract' in an insurance policy, or words to that effect, refers to liability incurred when an insured promises to indemnify or hold harmless another party, and thereby agrees to assume that other party's tort liability." *Id.* at 464. The court went on to hold that when there is such an insured contract, the party to the insured contract may directly seek coverage from the insurance company. *Id.* at 469.

{46} Allstate argues that the West Virginia cases are directly opposed to New Mexico law. Allstate relies on *City of Farmington v. L.R. Foy Constr. Co.,* 112 N.M. 404, 816 P.2d 473 (1991) for the proposition that under New Mexico law, notwithstanding a written agreement to provide insurance, the intended beneficiary does not thereby become an additional insured under the insurance policy, and therefore may not proceed directly against the insurance company. The Court in *City of Farmington* specifically stated that it expressed no opinion regarding whether a direct action may be brought by a third party against an insurer because that issue was not before it. *Id.* at 409 n. 9, 816 P.2d at 478 n. 9. The West Virginia cases thus are not opposed to New Mexico law, and provide guidance in this case.

{47} We conclude that there are issues of material fact that preclude summary judgment in favor of Allstate. The insurance policy on its face arguably provides coverage for Wilson under the insured contract provision. Allstate therefore has a duty at the least to provide a defense for Wilson. *See Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo,* 114 N.M. 695, 697, 845 P.2d 789, 791 (1992) (stating that an insurer is obligated to defend when the injured party's complaint contains allegations or states facts that bring the case within the coverage of the policy); *Found. Reserve Ins. Co. v. Mullenix,* 97 N.M. 618, 620, 642 P.2d 604, 606 (1982) (stating that when a complaint states facts within a policy's coverage, an insurer has a duty to defend). However, the extent of the coverage is yet to be determined on remand. The scope of the indemnity provision will determine the extent of coverage. We reverse the district court's grant of summary judgment in favor of Allstate.

## CONCLUSION

{48} The district court is affirmed in part and reversed in part.

{49} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and JONATHAN B. SUTIN, Judges.