2007-NMCA-157

173 P.3d 55

**ALLIANCE HEALTH OF SANTA TERESA, INC. d/b/a Alliance Hospital of Santa Teresa and Alliance Behavioral Health Services of Southern New Mexico, Inc. d/b/a The Adolescent Pointe, ARTC, Plaintiffs–Appellants,**

v.

**NATIONAL PRESTO INDUSTRIES, INC. and The Araz Group, Defendants–Appellees.**

No. 26,836.

Court of Appeals of New Mexico.

Oct. 25, 2007.

Guevara, Rebe, Baumann, Coldwell & Reedman, LLP, Colbert N. Coldwell, El Paso, TX, for Appellants.

Miller Stratvert, P.A., Alice Tomlinson Lorenz, Albuquerque, NM, for Appellee, National Presto Industries, Inc.

Sandenaw & Anderson, P.C., CaraLyn Banks, Las Cruces, NM, for Appellee, The Araz Group.

**OPINION**

KENNEDY, Judge.

{1} This is the second time this case has come before us for review. Alliance Health of Santa Teresa, Inc. (Alliance) brought suit against National Presto Industries (National Presto) and The Araz Group (Araz) (collectively Defendants) for promissory estoppel, fraud, breach of contract, and ERISA benefits. This case was originally before us for review based on a dismissal of Alliance's state law claims by the district court. *Alliance Health of Santa Teresa, Inc. v. Nat'l Presto Indus., Inc.*, 2005–NMCA–053, 137 N.M. 537, 113 P.3d 360. We reversed the district court and remanded for further proceedings. *Id.* ¶ 62. Alliance now appeals from a grant of summary judgment in favor of Defendants. Alliance argues that the district court erred in three ways: (1) in denying Alliance's motion for leave to amend its complaint, (2) in granting summary judgment on an unpled defense and based on insufficient documentation, and (3) by dismissing the case with prejudice.

**FACTS**

{2} On April 21, 1999, John Doe No. 2 (Doe No. 2), a minor dependent of John Doe No. 1, was admitted to the inpatient psychiatric hospital operated by Alliance. Doe No. 2 was covered through a self-insured plan (ERISA plan) offered by National Presto to its employees and was also covered by the New Mexico Medicaid program (Medicaid). As a beneficiary of the ERISA plan, Doe No. 2 was eligible for inpatient hospital psychiatric services, which were billed to and paid by National Presto. On May 11, 1999, National Presto authorized Araz, an independent contractor hired to perform case management for its ERISA plan, to provide case management for Doe No. 2. It was determined that Doe No. 2 met the medical necessities for living in a residential treatment center. On May 17, 1999, Doe No. 2 was transferred from the hospital to Adolescent Pointe, an accredited residential treatment center run by Alliance.

{3} At one point after treatment commenced, Araz provided notice to Alliance that Doe No. 2 might not be covered for residen-

tial treatment. Araz recommended that Alliance bill National Presto, and upon the receipt of a denial, that Alliance bill Medicaid. On October 26, 1999, Araz determined that Doe No. 2 was no longer eligible for residential treatment and informed Alliance. Alliance provided Doe No. 2's residential treatment until December 1, 1999. Alliance billed Medicaid and was paid for dates of service ranging from June 1, 1999, through November 26, 1999.

## PROCEDURAL HISTORY

{4} Alliance filed its original complaint against Defendants on September 12, 2000. Alliance filed three state law claims: for promissory estoppel, fraud, and breach of contract. Alliance also filed a claim under ERISA and claims against two John Doe defendants. Alliance requested damages and attorney fees. The state law claims were based on a purported guarantee or representation by Araz that National Presto would pay for all the residential treatment services provided to Doe No. 2.

{5} On October 20, 2000, National Presto responded to the complaint with a motion to dismiss, claiming that the state law claims were preempted by ERISA. Araz answered the complaint on October 24, 2000. On February 26, 2001, the district court granted the motion to dismiss, concluding that the state law claims were preempted by ERISA. National Presto then filed a motion for summary judgment on the ERISA claim, which Araz joined. On May 23, 2002, the district court granted the motion for summary judgment and dismissed the ERISA claim. Alliance requested a new trial on June 7, 2002, but did not include any new claims or amendments. Alliance appealed the district court's dismissal on June 26, 2002. This Court reversed the district court's decision that ERISA preempted Alliance's state law claims on March 29, 2005, and remanded the case to the district court for further proceedings.

{6} After remand, the parties engaged in discovery and Alliance filed a motion for summary judgment. Araz filed a countermotion for summary judgment. National Presto's response in opposition to Alliance's motion for summary judgment indicated that Alliance had sought out and accepted payment from Medicaid. On January 23, 2006, Alliance filed a motion for leave to file an amended complaint to recover on an "open account." In Araz's objections to Alliance's motion to amend, Araz addressed the Medicaid regulations that barred Alliance from collecting from National Presto after it had requested and accepted payment from Medicaid. With its objections, Araz attached business records documenting the payments, with no objection from Alliance. On April 10, 2006, Defendants filed a joint motion for summary judgment (alternatively requesting an order dismissing Alliance's complaint with prejudice) based on Alliance's acceptance of Medicaid payments, again attaching the same business records documenting the Medicaid payments. On May 31, 2006, the district court entered orders denying Alliance's leave to amend and granting summary judgment to Defendants. This appeal resulted.

## DISCUSSION

### District Court's Grant of Summary Judgment

{7} We review the district court's grant of summary judgment de novo. *Sedillo v. N.M. Dep't of Pub. Safety*, 2007–NMCA–002, ¶ 7, 140 N.M. 858, 149 P.3d 955. "Summary judgment is proper where there is no evidence raising a reasonable doubt that a genuine issue of material fact exists." *Matrix Prod. Co. v. Ricks Exploration, Inc.*, 2004–NMCA–135, ¶ 9, 136 N.M. 593, 102 P.3d 1285.

{8} Alliance argues that Defendants should be estopped from using Alliance's acceptance of payment from Medicaid as an affirmative defense because it is "impalpable, unfair and unjust." Alliance claims that Defendants' reliance on the Medicaid payment amounts to an affirmative, unpled defense. Alliance's cited authority does little to clarify why Defendants could not use Alliance's acceptance of payment from Medicaid in its motion for summary judgment.

{9} Defendants did not plead payment as a defense, nor did they move to amend their defense. Rather, after this case was initially remanded from this Court to the district court, the parties went forward with discovery. It was at this time that Defendants

discovered, through Alliance's own pleadings, and discovery materials, that Alliance had accepted payment from Medicaid, and Defendants brought the motion for summary judgment on that ground: that Alliance was statutorily estopped from seeking payment from an additional party. The district court granted summary judgment to Defendants on that ground. Alliance did not object at that time to Defendants' use of a statute barring payment being used as a defense.

{10} On appeal, Alliance mainly relies on two New Mexico cases to support its position that Defendants should be estopped from using the Medicaid payment as a defense. First, Alliance relies on *Bendorf v. Volkswagenwerk Aktiengeselischaft*, 88 N.M. 355, 540 P.2d 835 (Ct.App.1975), for the proposition that Defendants' use of the Medicaid "payment in full" is an unpled, affirmative defense. We fail to see the similarities between *Bendorf* and Alliance's claim. In *Bendorf*, during trial, an automobile manufacturer attributed fault to the plaintiff based on inattentive driving and received a jury instruction to that effect. *Id.* at 356–57, 540 P.2d at 836–37. This Court, in *Bendorf*, defined an affirmative defense as the "state of facts provable by defendant which will bar plaintiff's recovery once plaintiff's right to recover is otherwise established," and held that the jury instruction was improper because it did not reflect a true affirmative defense. *Id.* at 357–58, 540 P.2d at 837–38. *Bendorf* was silent on the issue of whether the affirmative defense was properly raised prior to trial, which is the issue in this case. *See generally Bendorf*, 88 N.M. 355, 540 P.2d 835.

{11} Alliance also cites to *Lindberg v. Ferguson Trucking Co.*, 74 N.M. 246, 392 P.2d 586 (1964) for the proposition that payment is considered an affirmative defense. *Lindberg* does indeed describe payment as an affirmative defense; however, *Lindberg* describes a situation in which the defendant pled payment as an affirmative defense. *Id.* at 248, 392 P.2d at 587–88. The plaintiffs disagreed with the court's assessment of the payment, arguing that defendants did not carry their burden of proof. *Id.* at 249, 392 P.2d at 588. *Lindberg* discussed whether the defendants

carried their burden of proof, not whether payment as an affirmative defense was properly before the court. These points do not help us in our analysis of this case, in which Alliance argues that by not pleading payment as an affirmative defense, Defendants should be estopped from using it as a basis for summary judgment. We note that National Presto does not argue that it paid Alliance, but that Alliance's acceptance of the Medicaid payment precludes National Presto's obligation entirely. This makes for a different situation, because here, "payment" is not that National Presto paid, but that another party did, statutorily discharging National Presto's obligation to Alliance.

{12} Regardless, the issue of Medicaid payment as an affirmative defense was properly litigated even if it was not affirmatively pled. *See Gallup Gamerco Coal Co. v. Irwin*, 85 N.M. 673, 677, 515 P.2d 1277, 1281 (1973) ("An affirmative defense must be pleaded, and if not pleaded *or otherwise properly raised*, it is waived." (emphasis added)). In *Gallup Gamerco Coal Co.*, our Supreme Court not only looked to whether the defense of accord and satisfaction was affirmatively pled, but also whether it was "argued at any stage of the proceedings." *Id.* In this case, when Defendants became aware of the Medicaid payment to Alliance, it was raised in their motion for summary judgment. Thus we consider the issue argued before the court. Our Supreme Court also held, in *Terrill v. W. Am. Life Ins. Co.*, 85 N.M. 456, 456–57, 513 P.2d 390, 390–91 (1973), that even though the defendant did not affirmatively plead illegality as a defense and did not move to amend its answer, because it was litigated, without objection, and the district court specifically ruled on it, it was not an issue for appeal.

{13} In this case, much like *Terrill*, Defendants did not plead payment as a defense, nor did they move to amend their defense. Rather, Defendants filed a motion for summary judgment on the ground that Alliance was statutorily barred from seeking payment from Defendants. The district court granted summary judgment on the ground that there was a statutory bar to payment. Alliance did not object at that time to payment being

used as a defense. Therefore, this is not an issue that is appropriate on appeal.

{14} Alliance argues that the district court erred by allowing Defendants to introduce evidence that Alliance accepted payment from Medicaid. Alliance argues that the documents produced by Defendants were "unauthenticated unsworn account records" (emphasis omitted) and should not have been allowed into evidence. We disagree, and hold that the district court did not err in considering evidence of payment. "We review the admission of evidence for abuse of discretion." *Couch v. Astec Indus., Inc.*, 2002–NMCA–084, ¶ 8, 132 N.M. 631, 53 P.3d 398.

{15} Defendants' motion for summary judgment included documents that Alliance had released during the discovery process showing that Alliance had sought and received payment from Medicaid. Initially, Alliance did not respond to Defendants' motion for summary judgment, and accordingly, Defendants filed a motion to dismiss. Defendants again attached the documents showing that Alliance sought and received payment from Medicaid. Alliance responded that Defendants' ground for summary judgment and dismissal was an affirmative defense that was not properly pled. Alliance also responded that the documentation provided by Defendants did not comply with Rule 1–056(E) NMRA, as not being based on an affidavit showing personal knowledge and not being verified. The district court found that the documents were competent evidence that the court could consider.

{16} Alliance does not point us to any case law that prohibits the district court from relying on the documents submitted by Defendants as grounds for summary judgment or dismissal. We also do not find Alliance's reference to Rule 1–056(E) helpful, as it relates to affidavits, and not to documentation attached to a motion for summary judgment. Contrary to Alliance's argument, Defendants were not required to attach affidavits to their motion. *Deaton v. Gutierrez*, 2004–NMCA–043, ¶ 29, 135 N.M. 423, 89 P.3d 672 (relying on Rule 1–056(A) which states that "[a] party seeking to recover upon a claim, counterclaim or cross-claim or to obtain a declaratory judgment may move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof"). Additionally, we look to Rule 1–056(C) NMRA to determine if the district court was precluded from relying on the documents. Rule 1–056(C) states that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Alliance provided Defendants with the documents showing payment from Medicaid in its response to discovery requests. Alliance does not argue that it was not paid by Medicaid. *See Elec. Supply Co. v. United States Fid. & Guar. Co.*, 79 N.M. 722, 725, 449 P.2d 324, 327 (1969) (holding that when there was no surprise and no prejudice, defendant was entitled to rely on defense of accord and satisfaction in its summary judgment motion even though it was not included in the pleadings). Alliance does not argue that the records are incorrect. *See Apodaca v. AAA Gas* Co., 2003–NMCA–085, ¶ 58, 134 N.M. 77, 73 P.3d 215 (noting that appellate court can affirm the authenticity of documents when plaintiff does not deny the underlying facts contained therein). The district court was entitled to rely on the documents submitted that were provided as part of discovery, especially in light of the fact that Alliance did not object to their use in the motion for summary judgment and does not argue the factual validity of the documents. Alliance confuses the rule about affidavits with the rule concerning documentation in support of a motion for summary judgment. Nothing in the rule prohibits or prevents the district court from considering the documents, along with pleadings, depositions, affidavits, and answers to interrogatories and admissions on file to determine whether there was a genuine issue of material fact. *See* Rule 1–056(C). Therefore, we find no error in the district court's consideration of the documents.

{17} Alliance argues that the district court erred in granting summary judgment because its view of the New Mexico Adminis-

trative Code was "short-sighted." The Administrative Code provides the following: "Following medicaid payment, providers cannot seek additional payment from a recipient or other legally responsible party in addition to the amount paid by medicaid." 8.302.1.15(C) NMAC. The Administrative Code was enacted in response to a federal statute which requires states that elect to participate in Medicaid to enact plans that comply with federal statutory and regulatory standards. 42 U.S.C. §§ 1396–1396v (2007); *id.* § 1396c (providing for discontinuation of federal payments if the state plan does not comply with the federal requirements). The Administrative Code carries the same weight and authority as statute. 8.200.400.3 NMAC; *see* NMSA 1978, § 27-2-12 (2006); *Qwest Corp. v. N.M. Pub. Regulation Comm'n,* 2006–NMSC–042, ¶ 20, 140 N.M. 440, 143 P.3d 478 ("Agencies are created by statute, and limited to the power and authority expressly granted or necessarily implied by those statutes.").

▄▄▄ {18} This case appears to be an issue of first impression, in interpreting and applying sections of the Administrative Code regarding Medicaid and payment to third parties. We are asked to interpret a regulation in the Administrative Code and are therefore presented with an issue of law, which we review de novo. *Qwest Corp.,* 2006–NMSC–042, ¶ 20; *State v. Collins,* 2005–NMCA–044, ¶ 23, 137 N.M. 353, 110 P.3d 1090. In interpreting sections of the Administrative Code, we apply the same rules as used in statutory interpretation. *Collins,* 2005–NMCA–044, ¶ 23 ("We must interpret a regulation contained in the Administrative Code. We review the provision de novo, as we would a statute."); *see Smyers v. City of Albuquerque,* 2006–NMCA–095, ¶ 7, 140 N.M. 198, 141 P.3d 542 ("For interpretation of ordinances, we follow the rules of statutory interpretation.").

▄▄▄ {19} There are three fundamental principles of statutory interpretation that apply in this case. "First, in discerning legislative intent, courts rely primarily upon the language used by the Legislature." *State v. Anaya,* 1997–NMSC–010, ¶ 42, 123 N.M. 14, 933 P.2d 223 (Minzner, J., concurring in part

and dissenting in part). Second, we give effect to the legislative intent in the statute, looking to the plain language first. *Qwest Corp.,* 2006–NMSC–042, ¶ 20. Third, "two statutes covering the same subject matter should be harmonized and construed together when possible, in a way that facilitates their operation and the achievement of their goals." *State ex rel. Quintana v. Schnedar,* 115 N.M. 573, 575–76, 855 P.2d 562, 564–65 (1993) (citation omitted).

{20} The district court determined, in its order granting Defendants' motion for summary judgment, that "[h]aving accepted Medicaid payments, [Alliance is] precluded ... from seeking additional payment from 'other legally responsible party [sic] in addition to the amount paid by medicaid.'" The district court relied on 8.302.1.15(C) NMAC. 8.302.1.15(C) NMAC states that "providers may not bill or accept payment from recipients or other third parties determined to be legally responsible for the balance of a claim. Following medicaid payment, providers cannot seek additional payment from a recipient or other legally responsible party in addition to the amount paid by medicaid."

{21} Looking to the plain language of 8.302.1.15(C) NMAC, we conclude that, having accepted payment from Medicaid for Doe No. 2's treatment, Alliance was not entitled to bill or accept payments from Defendants. Defendants qualify as a third party that would have been legally responsible for the claim.

{22} Although a "legally responsible party" is not defined in the Administrative Code, 42 U.S.C. § 1396a(a)(25)(A) requires a state to ascertain the legal liability of "third parties." Included in the term "third parties" definition are "health insurers, self-insured plans, group health plans, ... or other parties that are, by statute, contract, or agreement, legally responsible for payment of a claim for a health care item or service." *Id.* Applying this statutory definition to the situation before us, we hold that Defendants are third parties under federal law, and we draw the conclusion that National Presto qualifies as a "legally responsible party" under New Mexico law.

{23} We also look to other sections of the Administrative Code to make sure that our interpretation does not conflict with the other sections. Two regulations in particular caught our interest. 8.302.3.10(C) NMAC states that "[a] provider must immediately refund the lower of the third party or [Medicaid] payment, if he/she receives payment from insurance companies or health plans for services already paid for by [Medicaid]." We first look at the plain language of this regulation: it states that the provider must either return the Medicaid payment *or* the payment from the third party, whichever is lower. This regulation does not indicate that a provider may seek additional (or primary) payment from a third party in the event that it is unsatisfied with the Medicaid payment.

{24} Reading 8.302.3.10(C) NMAC in conjunction with 8.302.3.13 NMAC clarifies this position. 8.302.3.13 NMAC states that "[w]hen providers are aware of the existence of health insurance or health plan coverage for recipients, the providers *must seek payment from the insurance carrier before seeking payment from medicaid.*" (Emphasis added.) 8.302.3.13 NMAC, read in conjunction with 8.302.1.15 NMAC, indicates that the Legislature intended for Medicaid to be the payer of last resort, and that it is the provider's duty to first bill third parties before seeking payment from Medicaid. We will not read language into the Administrative Code unless it makes sense. *See Cadena v. Bernalillo County Bd. of County Comm'rs,* 2006-NMCA-036, ¶ 7, 139 N.M. 300, 131 P.3d 687 ("We do not read language into the ordinances unless they do not make sense."). Reading into the statute that Alliance has the right to first bill Medicaid, and then seek payment from Defendants would read an absurdity into the regulations, given the mandate that providers *must* first bill third party insurance carriers and that providers cannot seek payment in addition to Medicaid paid.

{25} We hold that the Administrative Code recognizes alternate sources of payment, but intends for Medicaid to be the final payer for services. Therefore, we affirm the district court's finding that Alliance is precluded from seeking payment from Defendants once

Alliance sought and received payment from Medicaid.

## District Court's Denial of Alliance's Motion For Leave To Amend Complaint

{26} Alliance argues that the district court erred in not allowing it to amend its complaint to recover on an "open account," as a basis for recovery of attorney fees. A district court's denial of a motion to amend is reviewed under an abuse of discretion standard. *See Matrix,* 2004-NMCA-135, ¶ 21. An abuse of discretion occurs when the district court "exceeds the bounds of reason, all the circumstances before it being considered." *Id.* (internal quotation marks and citation omitted). Alliance has not explained why justice would so require an amendment to include a claim on an open account, and the cases cited by Alliance have done little to clarify the matter. *See, e.g., Slide–A–Ride of Las Cruces, Inc. v. Citizens Bank of Las Cruces,* 105 N.M. 433, 436, 733 P.2d 1316, 1319 (1987) (concluding that because "[n]othing ha[d] been offered by [the plaintiff] to explain why justice required allowance of the amendment," the district court did not abuse its discretion in denying leave to amend). Because we have decided that Alliance is precluded from recovering payment from Defendants in this case, the addition of a claim for recovery based on another theory would serve no purpose. Granting of the amendment would have been futile. *See Stinson v. Berry,* 1997-NMCA-076, ¶ 11, 123 N.M. 482, 943 P.2d 129 (holding that trial court did not abuse its discretion in denying motion to amend complaint because the proposed amendment would have been futile).

## CONCLUSION

{27} We hold that the district court did not err in granting summary judgment to Defendants and dismissing the case with prejudice, because Alliance was statutorily estopped from seeking or accepting payments from National Presto, once it received payment from Medicaid. We also hold that Alliance's amendment of the complaint to include a claim for open account would have been futile

and therefore the district court did not err in not allowing this amendment.

{28} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and CELIA FOY CASTILLO, Judges.