This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK, as Trustee for the Certificate Holders of CWALT, INC., ALTERNATIVE LOAN TRUST 200-525T1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-25T1,**

Plaintiff-Appellee,

v.                                                        No. A-1-CA-35010

**DAVID EATON a/k/a DAVID ANTHONY EATON, SR. and DANDRE EATON,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**John F. Davis, District Judge**

Little, Bradley & Nesbitt, P.A.
Lucinda R. Silva
Albuquerque, NM

for Appellee

David Eaton
Corrales, NM

Pro Se Appellant

Dandre Eaton
Corrales, NM

Pro Se Appellant

**MEMORANDUM OPINION**

**BOHNHOFF, Judge.**

{1}     Defendants David Anthony Eaton, Sr. and Dandre Eaton (the Eatons) appeal from the district court's order granting summary judgment in favor of Plaintiff, The Bank of New York Mellon (BNYM). On appeal, the Eatons raise four challenges: (1) BNYM had no standing to foreclose on a note without being the holder of the note and the note contained no indorsement making BNYM the holder; (2) the third affidavit submitted by BNYM in support of its summary judgment motion was deficient and should not be considered in proving standing; (3) the assignment of the mortgage by Mortgage Electronic Registration Systems, Inc. (MERS) to BNYM was invalid to establish standing; and (4) BNYM's complaint failed to state a cause of action. This is a memorandum opinion and because the parties are familiar with the facts and procedural posture of the case, we set forth only such facts and law as are necessary to decide the issues raised. For the following reasons, we affirm.

**BACKGROUND**

{2}     On April 25, 2005, the Eatons made, executed, and delivered to Countrywide Home Loans, Inc. (Countrywide), a promissory note evidencing a debt in the principal sum of $400,000 accruing interest at the rate of 6.5000% per annum until paid. At the same time the Eatons executed and delivered to MERS, as nominee for Countrywide, a real estate mortgage for the purpose of securing the note. Thereafter, the note and mortgage were transferred to BNYM. The Eatons failed to make the payments due on the note. On September 30, 2011, BNYM filed a complaint of foreclosure against the Eatons and on December 1, 2011, the Eatons filed their pro se answer. On December 30, 2013, BNYM filed its motion for summary judgment as to all claims contained in its complaint with a supporting affidavit attached. On April 1, 2015, it filed a supplemental affidavit, and on August 24, 2015, it filed its third affidavit.

{3}     BNYM's first affidavit was executed by Melissa Black, an employee of Residential Credit Solutions, Inc., which serviced the loan for BNYM. In pertinent part the affidavit stated that BNYM was the holder of the note and mortgage. She stated that her basis of knowledge regarding the ownership of the note was her review of the books and records that Residential Credit Solutions, Inc., kept in the regular course of its business. BNYM's supplemental affidavit was also executed by Ms. Black and referred to all of the information, including loan history attachments, that

3

was provided in the first affidavit, but additionally included Ms. Black's statement that BNYM had been in possession of the note on or before the filing of the complaint.

{4} BNYM's third affidavit was filed in conjunction with its motion to strike answer to motion for summary judgment, or in the alternative reply to its motion for summary judgment. It was executed by Sandra Brown, an attorney in the law firm that represents BNYM. Attached to this affidavit, as identified by Ms. Brown, was a copy of the original note held by BNYM, containing a Countrywide indorsement in blank, and also relevant portions of the law firm's case log. Ms. Brown stated that she had personal knowledge of the law firm's procedure for creating business records. She stated that the law firm had received the original note, mortgage, and loan modification from BNYM on September 15, 2011, shortly before the BNYM complaint was filed.

{5} On August 21, 2015, the Eatons filed a response to the motion for summary judgment to which BNYM submitted a reply on August 25, 2015. On August 26, 2015, at the conclusion of a hearing, the district court granted summary judgment in favor of BNYM, concluding that the Eatons provided no evidence to controvert BNYM's facts.

**DISCUSSION**

**{6}** The Eatons' central contention is that the district court erred in granting summary judgment in favor of BNYM because BNYM lacked standing to bring the foreclosure action. The Eatons argue that BNYM lacked standing three reasons: (1) the note did not contain any indorsement making BNYM its holder; (2) the third affidavit submitted by BNYM was deficient to establish standing; (3) BNYM was not the holder of the mortgage because it was improperly assigned to it.

**A.    Standard of Review and Preservation of Error**

**{7}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "We review issues of law de novo." *Id.* "The movant need only make a prima facie showing that he is entitled to summary judgment. Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted).

**{8}** "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 (internal

quotation marks and citation omitted). The Eatons preserved the claimed error regarding standing in their answer to BNYM's motion for summary judgment and during the hearing.

**B.       Foreclosure Standing Principles**

{9}       Our Supreme Court has held that a party seeking to enforce a promissory note and foreclose on a mortgage is "required to demonstrate under New Mexico's Uniform Commercial Code (UCC) that it had standing to bring a foreclosure action at the time it filed suit." *Bank of N.Y. v. Romero (Romero)*, 2014-NMSC-007, ¶ 17, 320 P.3d 1; *see also PNC Mortg. v. Romero*, 2016-NMCA-064, ¶ 19, 377 P.3d 461 (holding that to establish standing, the foreclosing party "must demonstrate that it had the right to enforce the note and the right to foreclose the mortgage at the time the foreclosure suit was filed" (alteration, internal quotation marks, and citation omitted)).

{10}       In *Romero*, the borrowers gave a promissory note to Equity One, Inc., in exchange for funds that they used to refinance their home. At the same time, they signed a mortgage giving MERS, as nominee for Equity One, a security interest in the home. 2014-NMSC-007, ¶ 2. After the borrowers defaulted on their loan payments, the bank filed a complaint to enforce the note and foreclose on the mortgage. *Id.* ¶ 5. The bank alleged in its complaint that it was the holder of the note. *Id.* However, the evidence established only that the bank was in physical possession of the note and the

6

mortgage prior to filing the complaint. *Id.* ¶ 7. The mortgage was assigned to the bank only after the filing date, and the bank never established that the note was indorsed over to it. *Id.* ¶ 6. Our Supreme Court articulated several principles that led it to conclude that the bank failed to establish its standing to enforce the note and foreclose on the mortgage.

{11} First, under NMSA 1978, Section 55-3-301 (1992), a person generally has standing, i.e., the right, to enforce a note if it is the "holder" or "a nonholder in possession of the instrument who has the rights of a holder," i.e., a "transferee". *See Romero*, 2014-NMSC-007, ¶ 29. A "holder" is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" NMSA 1978, § 55-1-201(b)(21)(A) (2005). An instrument is payable to bearer if it is written or indorsed as such or is indorsed in blank. NMSA 1978, § 55-3-205(b) (1992). An instrument is payable to an identified person if that person is the original payee, or is specifically identified in an indorsement (a special indorsement). Section 55-3-205(a). Thus, and importantly, mere possession of a note does not suffice to establish standing as a holder unless the note originally identified the person in possession as the payee or is made payable to bearer. *See Romero*, 2014-NMSC-007, ¶ 21. If not, the person in possession of the note also must establish that the note is indorsed to bearer (or in blank) or specifically

to that person in possession. *Id.* The *Romero* court ruled that because the borrower's note was neither a bearer note nor specially indorsed to the bank, it lacked standing as a holder to enforce the note. *Id.* ¶¶ 19-28. The bank also could not establish that it was a transferee under Section 55-3-301. *See Romero*, 2014-NMSC-007, ¶¶ 29-33.

{12}     Second, while a person must be either the original mortgagee or the mortgagee's assignee to have standing to foreclose on a mortgage, the mortgagee or its assignee also must have standing to enforce the underlying note. *See id.* ¶ 35. Thus, bank's status as assignee of the Equity One mortgage did not suffice to give it standing to enforce the note or foreclose on the mortgage. *See id.* ¶¶ 34-36.

{13}     Third, a plaintiff seeking to enforce a note and foreclose on a mortgage must establish its standing to do so at the time it files suit. *Id.* ¶ 17. Even assuming the bank otherwise could have established that it was a holder of the note at the time of trial, because it clearly was neither a holder of the note nor an assignee of the mortgage at the time it filed the complaint, it did not have standing to bring suit to enforce the note and foreclose on the mortgage. *See id.*

{14}     In *Deutsche Bank Nat'l Tr. Co. v. Johnston*, 2016-NMSC-013, ¶ 2, 369 P.3d 1046, like *Romero*, the borrower refinanced his home. In exchange for the funds, he executed a note made payable to and a mortgage in favor of the lender, both dated in 2006. *Johnston*, 2016-NMSC-013, ¶ 2. After the borrower defaulted on his payment

obligations in early 2009, the bank filed suit to enforce the note and foreclose on the mortgage. *Id.* ¶ 3. The bank attached to the complaint a copy of the original, unindorsed note and the original mortgage; however, the bank alleged that it was the holder of the note and that it owned the mortgage through assignment. *Id.* In response to the borrower's motion to dismiss, the bank attached an assignment of the mortgage in its favor, dated seven days after execution of the original note and mortgage but recorded after the date of the complaint. *Id.* ¶ 4. Then at trial, the bank proffered a copy of the 2006 note that was indorsed by the lender in blank but without a date. *Id.* ¶ 6.

{15}    On appeal, following the district court's finding that the bank had standing to foreclose, this Court concluded that the evidence provided by the bank did not establish its standing. On certiorari review, our Supreme Court clarified that standing to enforce a note and foreclose on a mortgage is not a matter of jurisdiction, but only jurisprudential. *Id.* ¶¶ 10-14. The Court then reiterated its holding in *Romero* that such standing must be established as of the date the complaint is filed. *Johnston*, 2016-NMSC-013, ¶¶ 20-27. A lender may simply allege in its complaint that it is the holder of the note, *id.* ¶ 27, but on summary judgment or at trial, it must present evidence that proves holder status or other basis for standing as of the date of the complaint. *Id.* ¶ 26. Significant to our analysis here, the *Johnston* court explained that a bank may

prove possession by attaching the note with an undated indorsement to the complaint or producing a dated indorsement post-complaint to prove possession. *Id.* ¶ 27. The Court did not, however, state or even suggest that this was the only means of establishing such fact.

**C.     Indorsement of the Eatons' Note**

{16}     Here, the Eatons argue that the note assigned to BNYM contained no indorsement in blank or specifically to BNYM that evidenced that BNYM was the holder of the note. BNYM, however, evidenced its holder status by (1) providing documentary evidence that it possessed the note before it filed the complaint and (2) attaching to Ms. Brown's affidavit a copy of the original note that contained the Countrywide indorsement in blank.

{17}     The Court in *Johnston* made clear that proper supporting evidence that proves possession pre-complaint is sufficient to establish holder status of a note. *See id.* What was missing in *Johnston*, evidence that the bank held the note at the time the complaint was filed, is not missing here. BNYM provided this evidence through the affidavit of Ms. Brown. In her affidavit, Ms. Brown testified on the basis of her law

firm's business records, in particular, the case log and the safe contents log,[1] that (1) her firm received the Eatons' original note, mortgage, and loan modification on September 15, 2011; and (2) the firm was still in possession of the note and other loan documentation. A copy of the original note was attached to her affidavit and the copy contained the Countrywide indorsement in blank. Thus, consistent with the holdings in *Romero* and *Johnston*, BNYM provided not only evidence of its possession of the note pre-complaint, but also provided a copy of the original note that was in fact indorsed in blank. This evidence is sufficient to establish that BNYM had standing as the holder of the note.

**D.     Ms. Brown's Affidavit**

{18}     The Eatons next argue that because Ms. Brown is an attorney from the law firm that represents BNYM, her affidavit should not be considered. We disagree.

{19}     Affidavits supporting or opposing a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters

---

[1]The Rules of Evidence permit a custodian or qualified witness to testify to records of regularly conducted activity upon demonstrating that the records were made at or near the time by, or from information transmitted by, someone with knowledge and were kept in the regularly conducted activity of a business, and that making the records was a regular practice. Rule 11-803(6) NMRA. Further, Rule 11-901(B)(1) NMRA permits a witness with knowledge of a document to identify and authenticate it.

stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Rule 1-056(E) NMRA.

**{20}** In *Bank of New York Mellon v. Singh*, No. A-1-CA-34041, mem. op. ¶ 5 (N.M. Ct. App. Jan. 21, 2015) (non-precedential), this Court upheld a showing of standing in connection with a mortgage foreclosure dispute based on a lawyer's affidavit. We acknowledge that *Singh* considered the attorney affidavit in the context of a default judgment proceeding, where a homeowner was viewed as admitting the facts necessary to establish the bank's standing. *Id.* However, *Singh* still establishes that a post-complaint affidavit by the bank's attorney, stating that the attorney's firm held the note for the bank at the time the complaint was filed, was evidence that the bank was in possession of the indorsed note prior to filing the foreclosure. *Id.*

**{21}** In *PNC Mortgage*, this Court declined to consider an affidavit that stated "PNC is the legal holder of a [p]romissory [n]ote . . . dated May 02, 2006, and executed by [the borrowers], in the original principal sum of $240,000.00." 2016-NMCA-064, ¶ 29 (alteration and internal quotation marks omitted). However, we did so on grounds not present here. The statement that the mortgage company was the "holder" of the note is a legal conclusion and testimony by a lay witness that seeks to state a legal conclusion is inadmissible. *Id.* ¶ 30. The affidavit was of questionable value given the

lack of other evidence in support of the statement that the mortgage company was a "holder." *Id.*

{22} Ms. Brown's affidavit was produced in conjunction with BNYM's motion to strike answer to motion for summary judgment, or in the alternative, reply to its motion for summary judgment. BNYM added Ms. Brown's affidavit to provide additional testimony as to its possession of the original indorsed note before the complaint was filed. The affidavit sets forth Ms. Brown's qualifications to give her testimony and presents sufficient evidence and dated documents, per *Johnston*, to establish possession by BNYM of the original note prior to the filing of the complaint. Unlike *PNC Mortgage*, Ms. Brown's affidavit does not state any legal conclusions. In addition, Ms. Brown stated that she made the statements in her affidavit based on her personal knowledge, and there is no evidence that she was not fully competent to testify to the matters stated. *See* Rule 1-056(E).

{23} The Eatons did not submit any evidence with which to establish a disputed question of fact on this point. Like *Singh*, we see no reason why an affidavit from an attorney who works in the law firm that represents BNYM is not sufficient evidence to prove possession of the note pre-complaint. We therefore conclude that the district court did not abuse its discretion in finding that BNYM made an unrebutted prima facie showing through Ms. Brown's affidavit that it was in possession of the note

before it filed its complaint. *See Akins v. United Steelworkers of Am.*, 2009-NMCA-051, ¶ 40, 146 N.M. 237, 208 P.3d 457 ("We review a district court's decision to admit or exclude evidence [in a summary judgment context] for abuse of discretion."); *All. Health of Santa Teresa, Inc. v. Nat'l Presto Indus., Inc.*, 2007-NMCA-157, ¶ 14, 143 N.M. 133, 173 P.3d 55 (holding that we review the admission of evidence for abuse of discretion)

**E.     Assignment of the Mortgage to BNYM**

**{24}**     The Eatons further argue that the assignment of their mortgage by MERS did not convey standing to BNYM. Properly understood, the Eatons' argument actually focuses on validity of MERS' assignment of the mortgage to BNYM as opposed to BNYM's legal standing to bring suit.

**{25}**     Both our Supreme Court and this Court have expressly ruled that MERS, as nominee for a lender, can assign a mortgage on behalf of such lender. *See Romero*, 2014-NMSC-007, ¶ 35, 320 P.3d 1 (stating that "[a]s a nominee for [the original lender] on the mortgage contract, MERS could assign the mortgage"); *Flagstar Bank, FSB v. Licha*, 2015-NMCA-086, ¶ 17, 356 P.3d 1102 (reiterating that "where MERS' role was that of a nominee for [the l]ender and [the l]ender's successors and assigns, MERS could assign the mortgage" (alteration, omission, internal quotation marks, and citation omitted)), *abrogated on other grounds as recognized by BOKF, N.A. v.*

14

*Gonzalez*, No. A-1-CA-35691, 2017 WL 299830, mem. op. ¶ 3 (N.M. Ct. App. June 28, 2017) (non-precedential) (stating that mortgagors lacked standing to challenge assignment of mortgage on basis of lack of consideration). The Eaton's bare assertion that MERS lacks authority to assign a mortgage and without any reference to the facts in the record or supporting law will not be a basis for invalidating the assignment of the mortgage. *See Deutsche Bank Nat'l Tr. Co. v. Huerta*, No. A-1-CA-34337, 2015 WL 4381098, mem. op. ¶ 4 (N.M. Ct. App. June 30, 2015) (non-precendential).

{26} The mortgage was properly assigned through an "Assignment of Mortgage" instrument which states in part, "[MERS] as nominee, holder of a Mortgage from David Eaton . . . as Mortgagor(s), to [MERS], as nominee for Countrywide Home Loans, Inc., as Mortgagee, dated April, 25 2005. . . hereby assigns said Mortgage and the obligations secured thereby to[] The Bank of New York Mellon[.]" The relevant portion of the mortgage provides, "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument." The mortgage gave BNYM as the assignee of Countrywide the same rights Countrywide had in the mortgage as lender when MERS transferred the note to BNYM. The Eatons provide no evidentiary or legal ground for asserting that the assignment of the mortgage failed to transfer the mortgage's ownership from MERS to BNYM. BNYM established that MERS could

15

and did assign the mortgage to BNYM, and as such BNYM was entitled as a matter of law to foreclose on the mortgage.[2]

**CONCLUSION**

{27}    We affirm the district court's grant of summary judgment in favor of BNYM.

{28}    **IT IS SO ORDERED.**

 

**HENRY M. BOHNHOFF, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**STEPHEN G. FRENCH, Judge**

---

[2] Lastly, the Eatons failed to develop or support their argument that BNYM's complaint failed to state a cause of action. Therefore, we will not address this argument. *See Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24.