The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: June 30, 2022

**No. A-1-CA-39391**

**ANN MORROW & ASSOCIATES,**

  Appellant-Petitioner,

v.

**NEW MEXICO HUMAN SERVICES DIVISION,**

  Appellee-Respondent.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Bryan P. Biedscheid, District Judge**

Davis & Gilchrist, P.C.
Bryan J. Davis
Ellen A. Geske
Albuquerque, NM

for Petitioner

New Mexico Human Services Department
John R. Emery, Deputy General Counsel
Santa Fe, NM

for Respondent

**OPINION**

**BUSTAMANTE, Judge, retired, sitting by designation.**

{1}     We are presented with a legal question: Under its regulations, can the State recoup as an overpayment the entire amount it paid on a claim for medical services rendered when part of the services billed for were provided and part were not? Concluding that it cannot, we reverse and remand for further proceedings.

**BACKGROUND**

{2}     This case is presented to us by the parties with a limited factual and procedural history. Our report of the history of the case will thus be similarly truncated, and will rely to some extent on uncontested assertions in the parties' briefs. This limitation is acceptable because we are considering and resolving a narrow legal issue unaffected by the otherwise long history of the dispute between the Human Services Department (HSD) and the Appellant, Ann Morrow & Associates (Morrow).

{3}     Morrow was a provider of behavioral healthcare services under contract with the medical assistance division (MAD) of HSD to provide services to persons who qualify for Medicaid assistance. In 2011, Morrow was audited by HSD's Medicaid behavioral health services manager. After receiving the audit in February 2012, HSD began withholding payments to Morrow pursuant to 42 C.F.R. § 455.23 (2012) for "a credible allegation of fraud." Morrow asserts that HSD refused to disclose the results of the audit to Morrow. This state of affairs continued until August of 2015,

when the Attorney General's Medicaid Fraud Control Unit (MFCU) apparently concluded that it would not pursue Morrow for fraud. After that determination, HSD issued two overpayment demands to Morrow in the total amount of $441,997.05. The parties agree that they involved three different problems with Morrow's files: (1) instances in which there was no substantiating documentation reflecting any services; (2) instances of double billing in which the same time was billed by two different therapists; and (3) instances in which Morrow billed for more time than was actually spent with clients.

{4}     Morrow challenged both demands and both were considered in one hearing held pursuant to 8.352.3.9 NMAC. HSD presented the testimony of the MFCU investigator with regard to the details of her audit of Morrow's records. All of HSD's documentary evidence was admitted without objection. Morrow did not submit any documentary evidence. An HSD billing expert testified that it is HSD's policy to recoup the entire amount of an up-coded claim if the provider did not catch and adjust the up-coded claim in a timely fashion. The witness relied generally on 8.351.2 NMAC and 8.302.2 NMAC in support of HSD's practice. The Administrative Law Judge (ALJ) agreed with HSD's position and recommended that Morrow be required to reimburse all of the payments it received for the unsupported and up-coded claims. The MAD director agreed with the ALJ's recommendation.

{5}    Morrow appealed the director's decision in January 2017. In the district court, Morrow challenged only that portion of the decision based on double billing and "up-coding" violations—$130,575.80. Under 8.302.2.10(F) NMCA the services provided by Morrow were to be billed based on time spent with clients. Time spans are assigned unit values depending on the amount of time spent. HSD proved that a number of claims inflated the number of billable units for client sessions. Morrow argued that it should be allowed to keep payments for the amount of time it actually spent with clients. For example, if Morrow billed for four units, but its records reflect it actually spent three units of time with a client, it should be able to keep an amount payable for the three units of service it provided.

{6}    The district court issued its ruling affirming the ALJ's decision in November 2020. Morrow timely filed a petition for a writ of certiorari with this Court.

**STANDARD OF REVIEW**

{7}    When reviewing an agency decision by writ of certiorari, we apply the "same standard of review applicable to the district court under Rule 1-074(R) [NMRA] . . . while at the same time determining whether the district court erred in the first appeal." *Princeton Place v. N.M. Hum. Servs. Dep't*, 2018-NMCA-036, ¶ 26, 419 P.3d 194 (internal quotation marks and citation omitted), *rev'd on other grounds*, 2022-NMSC-005, 503 P.3d 319. Rule 1-074(R) provides that administrative decisions are reviewed to determine:

(1)	whether the agency acted fraudulently, arbitrarily, or capriciously;

(2)	whether based upon the whole record on appeal, the decision of the agency is not supported by substantial evidence;

(3)	whether the action of the agency was outside the scope of authority of the agency; or

(4)	whether the action of the agency was otherwise not in accordance with law.

{8}	While courts will accord some deference to an agency's interpretation of law, it is the fundamental duty of the courts to interpret the law and they are not bound by agency interpretations. *See Counseling Ctr, Inc. v. N.M. Hum. Servs. Dep't*, 2018-NMCA-063, ¶ 22, 429 P.3d 326; *Perez v. N.M. Dep't of Workforce Sols.*, 2015-NMSC-008, ¶ 9, 345 P.3d 330. Whether an administrative decision was in accordance with the law is a question of law, which we undertake de novo. *See Princeton Place*, 2022-NMSC-005, ¶ 34. We interpret administrative regulations using the same rules applicable to statutory interpretation. *See Town of Taos v. Wisdom*, 2017-NMCA-066, ¶ 6, 403 P.3d 713. As such, we start with the ordinary meaning of the text of the regulation as the most reliable indicator of its import. *See Stennis v. City of Santa Fe*, 2010-NMCA-108, ¶ 10, 149 N.M. 92, 244 P.3d 787. And we are mindful that no part of a statute or regulation should be rendered surplusage or superfluous by our interpretation. *AFSCME v. City of Albuquerque*, 2013-NMCA-063, ¶ 5, 304 P.3d 443.

**DISCUSSION**

**I.      The District Court Order**

{9}      The district court focused its analysis on Subsections (1) and (2) of Rule 1-074(R). Unsurprisingly, it concluded that there was substantial evidence supporting the ALJ's ruling because the up-coding and double billing had been proven. Morrow did not and does not, argue otherwise. The district court also seems to have concluded that HSD had not acted arbitrarily or capriciously in demanding recoupment of all amounts paid because there were good policy reasons for imposing "an additional penalty for misleading billing practices."

{10}      The district court concluded that the "additional penalty" was allowed by 8.351.2.13 NMAC, which governs recovery of overpayments. The district court only mentioned the fourth sentence of 8.351.2.13 NMAC in its discussion: "Overpayment includes, but is not limited to, payment for any claim for which the provider or other entity was not entitled to payment because an applicable MAD NMAC rule and its requirements were not followed." Relying on *Alliance Health of Santa Teresa, Inc. v. National Presto Industries, Inc.*, 2007-NMCA-157, 143 N.M. 133, 173 P.3d 55, it concluded that the term "claim" referred to the entire amount submitted and thus HSD could seek recoupment of the entire amount paid even if only a portion of the services reflected in the claim had not been earned.

6

{11} We detect two problems with the district court's reasoning. First, we note that *Alliance Health* dealt with a different regulation designed to address a different problem. As explained in *Alliance Health*, federal law prohibits Medicaid providers from accepting Medicaid payments and then seeking additional payments from patients or other third parties. *See id.* ¶ 17. That concept is reflected in 8.302.1.15(D) NMAC, the regulation at issue in *Alliance Health*. The issue here is a dispute between HSD and a contract provider, a relationship controlled by a different regulation. There is no readily apparent, much less dispositive, connection between the issues or regulations.

{12} More problematically, the district court did not mention or address the part of 8.351.2.13 NMAC that Morrow relied on: "Overpayments are amounts paid to a MAD provider or other entity in excess of the MAD allowable amount." By ignoring this provision, the district court failed to engage with the regulatory interpretation issue that is at the heart of the case.

**II.   Analysis**

{13} We agree with the district court that the "applicable [New Mexico Administrative Code] provisions are unclear." HSD's regulations describing provider responsibilities and duties with regard to services, billing, and record keeping are detailed and complex. *See* 8.302 NMAC. We do not need to delve into them in any detail, however, because Morrow does not dispute that the errors found

in the audits were real and that it owes HSD some money. The only question before us is how the reimbursement obligation should be calculated.

{14}    The regulations describing the "sanctions and remedies" HSD may impose when it discovers—and proves—fraud, misconduct or other errors by a provider are no less complex, and perhaps more murky, than 8.302 NMAC. HSD is required by federal regulations to implement plans to investigate and resolve fraud in Medicaid health care programs. 42 CFR § 455. HSD also has a role in enforcing the state Medicare Fraud Act. *See* NMSA 1978, §§ 30-44-1 to -8 (1989, as amended through 2004). HSD's enforcement plan is spelled out in 8.351.2.9 to -15 NMAC. These sections describe the range of actions HSD can take in response to provider "misconduct," including nonmonetary sanctions ranging from education measures to termination from the program, as well as a range of monetary penalties and fines. 8.351.2.9-12 NMAC. Recovery of overpayments is dealt with in 8.351.2.13 NMAC, the section at issue here.

{15}    This framework undermines one of the rationales articulated by the district court for allowing recovery of the entire amount—that the practice is justified as an additional penalty for misleading billing practices, and serves to discourage up-coding by providers. The district court, in essence, characterized the recovery of overpayments as a sanction. But sanctions and recovery of overpayments are addressed separately in the regulations, indicating that these are separate types of

remedies available to HSD. Further, there is no indication that HSD sought to impose a sanction here. HSD's notice to Morrow did not mention any sanction or remedy other than a demand for return of an overpayment. *See* 8.351.2.14 NMAC (describing HSD notice requirements). And the ALJ's recommendation did not mention any enforcement measure other than a recovery of overpayments.

{16}   We turn our attention to what is authorized by the regulation governing recovery of overpayments, 8.351.2.13 NMAC. As noted above, the regulation includes two definitions of "overpayment." The first describes overpayments as "amounts paid . . . in excess of the MAD allowable amount." The second provides that "[o]verpayment includes . . . payment for any claim for which the provider . . . was not entitled to payment because an applicable MAD NMAC rule and its requirements were not followed." The two provisions must be read and applied in concert if possible to "produce a harmonious whole." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350.

{17}   As a preliminary matter, we note that HSD's regulations do not include a provision explicitly allowing it to recoup the entirety of the amount it paid on a claim whenever a provider has overstated the time spent in providing services. There is no hint in the regulations that simple recoupment of overpayments should or must result in the additional penalty the district court noted. Neither do the regulations include a definition of "claim." Thus, there is no regulatory underpinning for HSD's reliance

on *Alliance Health* for the notion that any error in a submission for payment can require forfeiture of the entirety of the amount HSD paid based on the submitted request.

{18}    We are left with the task of reconciling the two provisions based on their language alone. The fourth sentence of 8.351.2.13 NMAC can be read to prohibit payment of the face value of a claim—or submission—that includes an error. It does not, on its face, say anything about what HSD can recoup based on a provider billing error. The most natural interpretation of the second sentence of 8.352.2.13 NMAC is that HSD is entitled to recoup that portion of the amount it paid on a claim that was erroneously billed. The erroneously billed time is "in excess of the MAD allowable amount." The portion of the submittal that would have been properly paid—for example, the number of units of time actually spent with a patient—is the "MAD allowable amount" in the parlance of the regulation and is not by definition an overpayment.

{19}    This interpretation of the relationship between of the two sentences works no matter the source of the error which led to an overpayment. In contrast, HSD's interpretation would apply only when the overpayment was due to an HSD error. We see no reason why the concept of "in excess of the MAD allowable amount" should be thus limited.

**CONCLUSION**

{20}    The district court's judgment is reversed and the matter is remanded to the HSD ALJ for recalculation of the overpayment due in conformance with this opinion.

{21}    **IT IS SO ORDERED.**

 

**MICHAEL D. BUSTAMANTE, Judge,
retired, sitting by designation.**

**WE CONCUR:**

 

**MEGAN P. DUFFY, Judge**

 

**SHAMMARA H. HENDERSON, Judge**